STATE ELECTRO-MEDICAL INSTITUTE V. L. M. PLATNER.

FILED JUNE 8, 1905. No. 13,574.

Corporations: CONTRACTS.  The contracts of a corporation to furnish the services of qualified and licensed physicians, members of the corporation or its agents, for an agreed compensation, are not prohibited by the statute nor against public policy, and the corporation may recover in its corporate name for services of duly qualified and licensed physicians furnished pursuant to such contracts.

ERROR to the district court for Douglas county: GUY R. C. READ, JUDGE.   *Reversed.*

*Edward J. Cornish* and *Nelson C. Pratt*, for plaintiff in error.

*Baldrige & De Bord, contra.*

SEDGWICK, J.

This plaintiff in error made a contract in writing with the defendant in error whereby it agreed "to render professional services to the party of the second part, until the party of the second part shall be cured of a certain disease, as appears upon the books of the party of the first part."   And the defendant on his part agreed to pay for the services a stipulated amount, and to "follow directions carefully, and take the medicine and remedies prescribed from time to time by the party of the first part, until a complete cure is effected."   This contract was signed by the defendant, and was also signed "State Electro-Medical Institute, Physician in Charge."   The plaintiff is a foreign corporation, and has an office and place of business in the city of Omaha.   In the district

court the plaintiff set out the foregoing contract, and alleged that it was made on behalf of the plaintiff, "by and through its duly licensed and practicing physician," and alleged that it was doing business "by and through duly licensed and practicing physicians," and was organized for said purpose, and no other, and alleged that by and through L. H. Staples, a duly licensed and practicing physician, the plaintiff had partially performed the contract, and that the said physician, for and on behalf of the plaintiff, had been ready at all times, and is now ready and willing, to perform all the duties and obligations imposed by the terms of the contract, but the defendant has refused to perform. The plaintiff asks judgment for the amount due it upon the contract.

There was a general demurrer to this petition upon the ground that it did not state facts sufficient to constitute a cause of action, and also upon the ground that "said petition shows that the plaintiff is a corporation; that the contract forming the basis of the plaintiff's action is for medical services, and the plaintiff is incapacitated to render, or contract to render, or to sue for medical services." This demurrer was sustained, and judgment entered for the defendant, which judgment is brought here for review.

1. It is contended that a contract for medical services made by a corporation, to be performed by a licensed physician, is void, and that the corporation cannot recover upon such contract. The statute which forbids any person to practice medicine without first having obtained a license is quoted and discussed in *State Electro-Medical Institute v. State, post,* p. 40. The provision of the statute defining what is meant by the words "practice medicine" is also quoted and discussed, and the conclusion is reached that to make contracts such as the one in question here, and to collect compensation thereunder, does not constitute practicing medicine, as those words are used in this statute, and that therefore it is not forbidden to do these things without first being licensed.

2. The first ground set forth in the brief, from which it is there concluded that the plea of the plaintiff was insufficient, is stated as follows: "No person may practice medicine in the name of another, or under the direction and supervision of another." The case of *State v. Paul*, 56 Neb. 369, is cited. We think that this case holds the reverse of what seems to be contended for it. Dr. Bedell, who was the principal, and presumably the one with whom the contract for treatment was entered into, was qualified and duly licensed under the statute. The defendant Paul was an assistant of Dr. Bedell, and, being not qualified and licensed to practice, he assumed to perform surgical operations and administer remedies to the sick and infirm. It was held that he was not protected by the qualifications and license of Dr. Bedell, although he acted as his assistant and under his directions. The principle established by this decision is that the qualifications of one who practices medicine are personal qualifications, and that it is the one who actually performs the surgical operation or administers the remedy that must be qualified and licensed under the statute. The fact that the doctor who makes the contracts, who takes the patients and undertakes to treat them, is duly qualified and licensed is immaterial. This seems to be the doctrine of *State v. Paul*.

3. The next point urged is that "no person may profit by or enforce an agreement for the practice of medicine, except he is qualified and licensed for the practice of the profession." This construction of the act would prevent action in the name of any assignee of a physician's claim for his services, whether such assignee might be a corporation, a copartnership or an individual. Ordinarily a disqualifying statute is strictly construed. Unless its provisions plainly disqualify the plaintiff from maintaining the action, it ought not to be given that effect. There is no language of the statute in question that can be so construed, nor is there anything in the spirit and purpose of the legislation that requires such construction. This

question was mentioned in *Citizens' State Bank v. Nore,* 67 Neb. 69. It was said in the opinion in that case:

"While section 15 provides that 'no person shall recover,' the latter part of the section indicates that this prohibition is limited to the practitioner himself."

That is, no person shall recover upon such claim whether he be owner or assignee, or in whatever capacity he may claim to recover, unless "the practitioner himself" who performed the services was qualified and duly licensed at the time, and if the practitioner himself was qualified and duly licensed, the provision of the statute seems to be complied with.

The defendant cites the case of *Langdon v. Conlin,* 67 Neb. 243, as holding that one who is not licensed as an attorney and counselor at law cannot recover fees earned by an attorney who is licensed. That case is supposed to be authority for the proposition that a copartnership composed of one who is a licensed attorney and one who is not cannot recover for legal services furnished by the licensed attorney. But the case is not authority for such proposition. The point decided in the case is stated in the syllabus. It is contrary to public policy for one who is not an attorney at law to contract with one who is, for a share of the fees earned, to procure clients for him, who shall employ him to prosecute legal proceedings for them. Such contracts would tend to the encouragement of litigation, and the law will not recognize and enforce them. But if one who is not a licensed attorney is engaged in a collection or other similar business, we know of no principle of public policy that would prevent the formation of a copartnership between such a person and a licensed attorney, whereby it should be agreed that each would carry on his own particular business—the attorney at law practicing his profession—and that the earnings of both should belong to the copartnership. If it was distinctly understood that the practice of law should be carried on entirely by the licensed member of the firm, there seems to be no principle of public policy that would

make such a contract unlawful. *Harland v. Lilienthal,* 53 N. Y. 438.

There is perhaps some language used in the opinion in *Langdon v. Conlin* that might be supposed to support the defendant's contention, and yet it is plainly stated in the opinion that there is but one proposition necessary to discuss, "and that is whether or not this contract is against public policy and good morals and therefore void." The provision of the statute (sec. 5, ch. 7, Comp. St. 1903; Ann. St. 3604), prescribes it to be the duty of a licensed attorney "to counsel or maintain no other actions, proceedings, defenses, than those which appear to him legal and just, except the defense of a person charged with a public offense," and "not to encourage the commencement or continuance of an action or proceeding from any motive of passion or interest," and it is said in the opinion:

"Under a statute with no more stringent regulations governing the practice of law than our own, a contract on all fours with the one in the instant case was declared void, as against public policy and good morals, in *Alpers v. Hunt,* 86 Cal. 78, 9 L. R. A. 483, 21 Am. St. Rep. 17, 24 Pac. 846. The case is supported in principle by the holdings in *Burt v. Place,* 6 Cow. (N. Y.) 430; *Munday v. Whissenhunt,* 90 N. Car. 458. Where, as in the case at bar, a part of the consideration of the contract in issue was an agreement to furnish evidence in litigation to be commenced, the supreme court of New York, in *Lyon v. Hussey,* 82 Hun (N. Y.), 15, 31 N. Y. Supp. 281, said: 'It is clear that such a contract is against public policy. The recognition of contracts of this character would be the introduction of all sorts of fraud and deception in proceedings before courts of justice, in order that parties might receive compensation out of the results of their successful manufacture of proofs to be presented to the court, thus holding out a premium upon subornation. The mere statement of the proposition seems to show that such a contract could never be recognized in any court of justice.'"

This language puts the decision in that case strictly upon the point stated in the syllabus. It is the only point determined in the case.

In *Alpers v. Hunt*, 86 Cal. 78, the contract sued upon was in substance this: A third person, not an attorney and counselor at law, enters into an agreement with an attorney and counselor at law that he will procure his employment by a litigant, and that in consideration of such procurement he is to have from the attorney and counselor so employed one-third part of whatever remuneration the attorney received for his services from the litigant; and it was held that such a contract was contrary to public policy and void. It will be noticed that the contract was to procure a certain person to entrust a particular litigation to the attorneys, and for this service one-third of the fee from the client was to be paid. The court said:

"Now, if either of the attorneys who contracted with Bolte had lent to the latter his name to be used by him as attorney and counselor, he would have been guilty of a violation of the clause above quoted. * * * Was not Bolte really allowed to use their names in the prosecution of a matter in litigation?"

The principle involved is the same as in *Langdon v. Conlin, supra.* It is against public policy for attorneys to employ one not licensed to procure clients for them. It is equally against public policy to allow one who is not licensed to use the name of a licensed attorney in the prosecution of a matter in litigation. This latter was because the statute of California expressly forbids such practice, and it was thought that the contract involved amounted to agreeing that an unlicensed person should prosecute litigation in the name of a licensed attorney. This case is not authority for the proposition that a corporation composed of licensed attorneys could not recover in the name of the corporation for legal services rendered by such attorneys. At all events the statute under consideration here cannot be construed to prevent

licensed practitioners of medicine to form a corporation, and to make contracts with their patients in the corporate name. If one or more of the incorporators should not be licensed physicians the case would not be different. The person who practices medicine, that is, who undertakes to judge the nature of disease, or to determine the proper remedy therefor, or to apply the remedy, must have the necessary qualifications and obtain license. No recovery can be had for the services of any physician who is not so qualified. A hospital which is controlled by a corporation, and which receives patients, and contracts to care for them and to furnish them with medical attendance, does not by so doing practice medicine within the meaning of this act. It is said that, if a corporation can make such contracts without obtaining a license, it will be within the power of its officers, who are not licensed to be physicians, and over whom the state board of health has no control, to obtain a fee upon the assurance that a manifestly incurable disease can be permanently cured. In other words, that a corporation may conduct itself as a physician may not; that it may do things that would be a sufficient ground for the state board of health to revoke the license of a physician if done by him, and that the purpose of the legislature was to prevent such action. Whether a physician who allowed a corporation to make such contracts for his services, or who associated himself with, and practiced in pursuance of contracts made by, corporations that indulged in conduct that would be unprofessional if done by a physician, might himself be made responsible for these acts of the corporation, and so subject himself to the penalties of this act, it is not necessary in this case to determine. This contract is signed by the "Physician in Charge." He would seem to be as much responsible for this contract, and his own action under it, as if he had executed the contract in his own name. Would the same be true of any physician who, being in the employ of this defendant, should practice medicine pursuant to this contract? If

further legislation is necessary to regulate and control the conduct of such corporations, and of physicians connecting themselves with such corporations, the argument should be addressed to the legislature. We cannot derive such legislation from any public policy indicated by the provisions of this act.

It is further suggested that one of the grounds for revoking the license of a practicing physician is unprofessional conduct in the betrayal of professional secrets, and that there is no restriction upon a corporation that might obtain such secrets and betray them. Such secrets are imparted for the purpose of enabling the physician who treats the patient to understand the nature of his disease and to determine the best course of treatment. No self-respecting physician would encourage the curiosity of his clerks or assistants in attempting to discover the secrets of his patients, and if he participated in such conduct, or knowingly consented to its exercise, he might furnish grounds for the revoking of his license. If the patient saw fit to divulge his secrets to the assistants or agents without the knowledge of the physician, he would be supposed by so doing to indicate his willingness that they be published to the world.

As was said in *State Electro-Medical Institute v. State, supra,* making such contracts as the one involved herein, and collecting compensation for services of qualified and licensed physicians rendered pursuant to such contract, do not constitute practicing medicine and are not in violation of the statute or public policy.

The judgment of the district court is therefore reversed and the cause remanded for further proceedings.

REVERSED.

BARNES, J., dissents.