[Civ. No. 10206.   Second Appellate District, Division One.—June 18, 1936.]

BENJAMIN FRANKLIN LIFE ASSURANCE COMPANY (a Corporation), Respondent, v. E. FORREST MITCHELL, Insurance Commissioner, etc., Appellant.

U. S. Webb, Attorney-General, and John L. Flynn and Paul D. McCormick, Deputies Attorney-General, for Appellant.

Carlos S. Hardy for Respondent.

DORAN, J.—This is an appeal from a judgment in favor of petitioner, the Benjamin Franklin Life Assurance Company, and against respondent E. Forrest Mitchell, Insurance Commissioner of the State of California, in a *mandamus* proceeding wherein the judgment ordered respondent commissioner to approve petitioner's "certain form of application for and policy of indemnity against loss . . . "

Respondent company's petition for a writ of mandate alleged that it was and is authorized to engage in the business "of life, health, accident, annuity and endowment insurance on the assessment plan as provided for by Chapter VI, Title 2, Part 4, Division 1 of the Civil Code of the State of California".

It appears from the record herein that petitioner submitted for respondent commissioner's approval a certain form of an

application for, and a policy of indemnity against loss by reason of medical and hospital expenses occasioned by disease or injury suffered by the insured. Said application and policy in addition to its general clauses provided, quoting from the policy, that the insurance company "Hereby agrees to reimburse the Insured for actual expenditures made or obligations incurred for any of the services, hereinafter set forth (paragraphs A to K inclusive) to be and only when rendered by, while the Insured is wholly under the care of, legally qualified Doctors of Medicine and Surgery, Optometrists, Hospitals, Ambulances, Pharmacies and X-Ray Medical Laboratories, approved and designated by the Policyholders Committee of the Company for the benefit of the Insured, . . . "

The application for a policy bound the applicant to the performance of a certain condition which, quoting from the application, was as follows: "I hereby appoint and empower the Policy-Holders Committee of the Company, duly elected at each regular annual meeting of policyholders on first Monday in January of each year as per the By-laws of the Company, my true and lawful attorney in fact and my proxy for a period of seven years to represent me and to vote for me in my stead, should I be absent or fail to revoke this proxy in writing, in all regular and special meetings of policy-holders, and to approve and designate for me, during the life of the policy, the renderers of the services under the terms of the policy for which I am applying . . . "

The insurance policy contained the following provision: "If the Insured places himself under the treatment or care of any person other than a regularly licensed M. D. (Doctor of Medicine and Surgery) approved and designated by the Policyholders Committee of the Company, all right to reimbursement for the expenses of any services for any condition arising out of or in connection with such treatment or care shall be forfeited hereunder."

It is contended by appellant that the insurance policy in question violates the Medical Practice Act of the State of California, and that therefore *mandamus* will not lie to compel the Insurance Commissioner of the State of California to approve an insurance policy, the terms of which are unlawful. It appears to be well settled "that neither a corporation nor any other unlicensed person or entity may

engage, directly or indirectly, in the practice of certain learned professions including the legal, medical and dental professions" (*Pacific Employers Ins. Co.* v. *Carpenter*, 10 Cal. App. (2d) 592 [52 Pac. (2d) 992]), and it is urged by appellant that respondent company, by reason of the terms of the policy, engages indirectly in the practice of medicine.

It is argued by petitioner that the instant case is not analogous to the authority above quoted because petitioner is a mutual assessment company, and that the contract of insurance herein is different in that by its terms it binds the company to "reimburse the insured for actual expenditures made or obligations incurred for any of the services" rendered by legally qualified doctors of medicine, surgery, etc., "approved and designated by the policyholders committee of the company for the benefit of the insured", the insured having previously designated the policyholders committee, composed of members like himself, to select the doctors. Moreover, urges the petitioner, the company, "by the contract in question, does not undertake or agree to furnish any medical or other services to its members nor does it undertake or agree to employ anyone to furnish such services nor does it undertake nor agree to pay to any person any compensation who may furnish medical or other services". It is further claimed that, "At most it undertakes to reimburse its policyholder the cost and expenses incurred by him for medical and other services designated in the policy and such reimbursement is payable directly to the policyholder only."

This is literally true, but that which the company as such cannot do lawfully, it *requires* its members, by means of a contract with such members as individuals, to accomplish for it through the medium of a so-called "policyholders committee", the creation of which is evidently provided for in the by-laws of the company. It should be noted, however, that the so-called policyholders committee is not a committee of the policyholders but a committee *of the company*. The selection and designation of doctors by said policyholders committee is therefore, after all, but a selection and designation by the company. The creation of the committee is not a voluntary contribution of the members for mutual benefit, but is a condition contained in the policy at the time of the sale thereof. The company thereby undertakes to do indirectly what it cannot lawfully do directly.

If, in its inception, it was not the plan of the company to circumvent the Medical Practice Act, it is a coincidence that the doctors designated by the committee were so well protected, for in that connection it is significant that the policy does not provide that the insured shall be compensated for losses covered by the policy, but that the insured shall be *reimbursed;* in other words, the insured gets nothing until the doctor is paid. The policyholder is not accorded the privilege of presenting his claim, collecting the amount thereof and then paying the doctor. Under such circumstances it is evident that the doctors designated by the "committee of the company" receive equal, if not first, consideration in the dispensing of benefits. Petitioner's plan, which is designated insurance, plainly provides for the sale of medical services, which is the practice of medicine. The claim of petitioner, therefore, that respondent commissioner's refusal to approve said application and policy of indemnity forms, was arbitrary, unjust and unlawful, lacks support in the record; on the contrary, the contention of appellant that respondent company under the guise of an insurance company engages in the practice of medicine, must be sustained.

Respondent company's brief contains an able and enlightening discussion of the subject of health insurance as applied to the questions herein involved, and in connection with this subject, quoting from its brief, urges that "there are and have been from the very beginning of this state, fraternal orders and lodges, religious organizations, benevolent associations, hospitals, hospital associations, labor union and other employee associations, which have been engaged in collecting periodic dues from their members for the purpose of furnishing them medical services to be rendered by doctors employed on a salary basis by such organizations, and in any event, by doctors chosen by the executives of the said organizations, and in whose selection the patient-member has no choice. Noteworthy examples are the hospitals and homes owned and operated by Masonic bodies, the Foresters, Woodmen, Knights of Pythias, and similar societies. Are they practicing medicine? Hardly will appellant say yes, but where the difference in principle? During the course of eighty-five years no one has ever challenged the legality of the operations of the organizations just mentioned. However, if this court should decide this case in favor of appel-

lant, it must logically follow that all of the organizations referred to will be put in the category of violators of the law; in short, they will be outlawed."

Thus by analogy petitioner seeks to impel the conclusion that what is lawful for the above-mentioned associations is lawful for petitioner, and *vice versa.* Generally speaking, by "analogy" is meant any resemblance between things which allows the belief of one from what is known of the other, and the logical value of the conclusion, based upon the comparison, depends upon the degree of resemblance between the things compared. Relying on common knowledge, it is at once evident that respondent insurance association bears no resemblance to the above-mentioned fraternal organizations, hence the conclusion from such comparison, urged by petitioner, is of no probative value. The respondent association is primarily engaged in the sale of medical services,—by whatever name it may be called,—sold through the medium of insurance. None of the features that are prominently characteristic of the above-mentioned benevolent societies are included in respondent's so-called "mutual association".

In *Pacific Employers Ins. Co.* v. *Carpenter, supra,* a case somewhat analogous to the instant case, the court on that subject made the following observation: "It is a matter of common knowledge that the general subject of health insurance has provoked much discussion in recent years and it is also a matter of common knowledge that there is a great diversity of opinion concerning this subject. There are those who believe that the time has come when the rules so firmly established by the authorities above cited should be changed or modified in certain respects. We do not feel called upon, however, to discuss this question, for if the established rules are to be changed or modified, we deem it to be the province of the legislature rather than the courts to determine when, to what extent and under what conditions and restrictions, the change or modification should be made." The conclusion just quoted is consistent with the fundamental rules of construction.

The judgment is reversed.

York, J., concurred.

Houser, P. J., dissented.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 17, 1936.