[S. F. No. 15690. In Bank.—September 2, 1938.]

THE PEOPLE ex Rel. STATE BOARD OF MEDICAL EXAMINERS, Respondent, v. PACIFIC HEALTH CORPORATION, INC. (a Corporation), Appellant.

Knight, Boland & Riordan for Appellant.

U. S. Webb, Attorney-General, and Lionel Browne, Deputy Attorney-General, for Respondent.

Hartley F. Peart, Howard Hassard and Gilford R. Rowland, as *Amici Curiae* on Behalf of Respondent.

THE COURT.—This is an appeal from a judgment in *quo warranto* against defendant holding its activities violative of the California Medical Practice Act (now sections 2000–2496 of the Business and Professions Code).

The facts are stipulated. Defendant Pacific Health Corporation, Inc., is a corporation organized under the general corporation law of the state of California, with its principal place of business in San Francisco. Upon application of persons in good health, the defendant issues a contract by the terms of which defendant undertakes to pay for services rendered by physicians, hospitals, ambulance and medical laboratories under certain circumstances, and the applicant pays the required sum or premium therefor. When a contract holder becomes sick or is injured, defendant advises him from whom these services are to be obtained, that is, the physician, hospital or ambulance available to him. After the services are rendered, defendant pays the charges. Defendant keeps a list of physicians and surgeons approved by it, and to obtain the benefits of the service the contract holders must, save as to emergency expenses not exceeding $50, accept a doctor from the list.

Defendant is a stock corporation, operated for profit. It advertises its service and solicits the public for purchase of its contracts, paying commissions to its soliciting agents.

The money collected from contract holders is paid into the general fund, and this, together with the capital and surplus, is invested. The charges for medical services are paid out of the general fund and income from investments.

Upon these facts the lower court concluded that defendant was illegally engaged in the practice of medicine, in excess of its corporate rights, powers and franchises. It was ordered that defendant be excluded from such practice, and that its articles of incorporation be amended to conform to the decree. We are in accord with the court's conclusion.

The issue presented herein is not new, and has been considered in this state by recent cases which are controlling. It is an established doctrine that a corporation may not engage in the practice of such professions as law, medicine or dentistry. (*People* v. *Merchants Protective Corp.*, 189 Cal. 531 [209 Pac. 363] ; *Painless Parker* v. *Board of Dental Examiners*, 216 Cal. 285 [14 Pac. (2d) 67] ; *Pacific Employers Ins. Co.* v. *Carpenter*, 10 Cal. App. (2d) 592 [52 Pac. (2d) 992] ; *Benjamin Franklin Life Assur. Co.* v. *Mitchell*, 14 Cal. App. (2d) 654 [58 Pac. (2d) 984] ; *People* v. *United Medical Service*, 362 Ill. 442 [200 N. E. 157, 103 A. L. R. 1229] ; see notes, 25 Cal. L. Rev. 91; 10 So. Cal. L. Rev. 329; 30 Ill. L. Rev. 533.) This doctrine is not challenged by defendant, which seeks to distinguish its activities from those previously held to constitute illegal practice of medicine. It is stated that defendant does not itself undertake to perform medical services, but merely to furnish competent physicians; that the contracts do not contemplate that services shall be performed at its offices, but elsewhere; and that the doctors are not employed by defendant on a salary basis, nor directed by defendant, but are compensated for actual services after they are rendered. Defendant's theory is that the doctors are independent contractors, and that this fact absolves it of the charge of practicing medicine.

We are unable to agree that the policy of the law may be circumvented by technical distinctions in the manner in which the doctors are engaged, designated or compensated by the corporation. The evils of divided loyalty and impaired confidence would seem to be equally present whether the doctor received benefits from the corporation in the form of salary or fees. And freedom of choice is destroyed, and the elements of solicitation of medical business and lay control of

the profession are present whenever the corporation seeks such business from the general public and turns it over to a special group of doctors. As the court said in *Pacific Employers Ins. Co. v. Carpenter, supra,* 10 Cal. App. (2d) 601: "But we need not quibble here over the use of terms as it is immaterial whether the appointed practitioners are termed employees, agents or appointees of the petitioner. The fact remains that petitioner's agreement was to furnish, in consideration of the premium paid by the insured, the services of doctors and dentists who were to be appointed, engaged, hired or employed by petitioner for the purpose of furnishing such services. Any such agreement is clearly condemned as unlawful and against public policy by the authorities above cited."

The foregoing case is so similar in its facts to the instant case as to be conclusive on the issue before us. (See, also, *Benjamin Franklin Life Assur. Co. v. Mitchell, supra.*)

Defendant suggests that the Medical Practice Act should be strictly construed so as not to prohibit its activities; but this argument ignores the basic policy of the law, of which the statute is merely declaratory, against corporate practice of the learned professions, directly or indirectly. (See authorities cited *supra.*)

Although, as we have already pointed out, defendant does not challenge but fully concedes that corporations cannot practice the learned professions, the procedure which it seeks to defend is within the prohibition of this doctrine. To avoid this result, defendant launches into a discussion of the effect of an adverse decision upon other organizations and activities. Our attention is called to certain data from medical and lay sources in support of the movement for group medicine and health insurance, and we are told that a decision against defendant will outlaw all fraternal, religious, hospital, labor and similar benevolent organizations furnishing medical services to members. We have given careful consideration to this argument and we find it wholly unconvincing.

The question of the effect of this decision upon any other organizations is not squarely before the court, and the information in the record as to their character and activities is meager and unsatisfactory. If we undertook to determine their legality in this proceeding, in which they are not repre-

sented, our decision would have no binding force. But it should be pointed out that the fear of applying the holding of this case to such philanthropic associations as those mentioned does not exist in the minds of the directors thereof, nor has it been suggested that the public authorities contemplate any attack on them. This illusory apprehension is expressed by defendant alone, in an attempt to bolster up its case by bringing it within the general class of associations furnishing medical or health benefits which have been tacitly approved for generations. But a most obvious and, to us, a fundamental distinction must be made between defendant and these other institutions. In nearly all of them, the medical service is rendered to a limited and particular group as a result of cooperative association through membership in the fraternal or other association, or as a result of employment by some corporation which has an interest in the health of its employees. The public is not solicited to purchase the medical services of a panel of doctors; and the doctors are not employed or used to make profits for stockholders. In almost every case the institution is organized as a nonprofit corporation or association. Such activities are not comparable to those of private corporations operated for profit and, since the principal evils attendant upon corporate practice of medicine spring from the conflict between the professional standards and obligations of the doctors and the profit motive of the corporation employer, it may well be concluded that the objections of policy do not apply to nonprofit institutions. This view seems almost implicit in the decisions of the courts and it certainly has been the assumption of the public authorities, which have, as far as we are advised, never molested these organizations.

The other question raised by defendant's proffered materials is whether the time has come, as indicated by the movement for health insurance and group medicine, to reverse the long-settled policy against corporate medical practice and declare it legal and proper. A simple answer would be that the few extracts from the opinions of writers which we find in the briefs furnish us with no evidence whatsoever of a widespread change in social viewpoint sufficient to repudiate the existing law of practically all the states. All that we have before us is the proof of a controversy which has raged for years, between medical men, sociologists and others,

as to the future course of medical practice. The desirability of present methods and the suggested reforms, including various kinds of insurance and group treatment, are hotly debated. (See 25 Cal. L. Rev. 91, 93.) Public policy may change, and doubtless where statutes do not cover the field, the court may follow such changes, but the court must, in such case, declare the *public* policy, the social view of people generally, and not merely its own private choice among hopelessly conflicting views of desirable reform of settled practices or principles in this field. In the present circumstances there can be no true declaration by this court that a change in social viewpoint now requires the abandonment of the rule against corporate practice of medicine. Such a drastic change should come from the legislature, after the full investigation and debate which legislative organization and methods permit. Though certainly aware of the controversy, and with presumed knowledge of our decisions preventing corporate practice (see *supra*), the legislature thus far has not acted, and until it does we deem it proper to follow the existing law. (See *Pacific Employers Ins. Co.* v. *Carpenter, supra,* 10 Cal. App. (2d) 602.)

We might observe, in conclusion, that an admission of the desirability of some form of health insurance or group medicine by no means requires approval of the activities of defendant. It is perfectly possible to bring adequate medical service to the vast numbers of people who now can ill afford it by some means which will protect both the profession and the public from the evils of corporate control of the practitioner. An example is found in the system adopted by the city and county of San Francisco for the furnishing of medical service to its employees, approved by us in *Butterworth* v. *Boyd,* S. F. 16017, this day filed. (*Ante,* p. 140 [82 Pac. (2d) 434].)

The future of group medicine would seem to lie either in such well considered plans, submitted to and adopted by the proper legislative authority, or in a carefully regulated statute setting forth the means by which private organizations may offer such services.

The judgment is affirmed.

EDMONDS, J., Dissenting.—This case presents only two questions for decision: (1) Does the plan followed by the

appellant in providing health service for its contract holders violate the provisions of the Medical Practice Act, and (2) If not, is its plan violative of public policy? I find nothing in the act which expressly or by implication prohibits a corporation from hiring a physician regularly licensed to practice in this state to care for its employees or members, and I see no reason for holding that the plan contravenes public policy.

The decision to the contrary relies upon the cases of *Painless Parker* v. *Board of Dental Examiners*, 216 Cal. 285 [14 Pac. (2d) 67] , *People* v. *Merchant's Protective Corp.*, 189 Cal. 531 [209 Pac. 363] , *Pacific Employers Ins. Co.* v. *Carpenter*, 10 Cal. App. (2d) 592 [52 Pac. (2d) 992], and *Benjamin Franklin L. Assn. Co.* v. *Mitchell*, 14 Cal. App. (2d) 654 [58 Pac. (2d) 984]. The two appellate court decisions are directly in point in support of respondent's position. The opinions in those cases clearly hold that a health insurance plan similar to that involved in the present case is violative of the Medical Practice Act and of public policy, in that it contemplates and provides for the practice of medicine by a corporation, although it may be noted that the Benjamin Franklin case was decided by a divided court. The Painless Parker case involved the unlawful practice of dentistry by a corporation in violation of the Dental Practice Act, a statute substantially different from the Medical Practice Act in that it expressly prohibited the practices there involved. There can be no doubt, and appellant concedes, that within certain constitutional limitations the legislature may declare that the employment of physicians by lay persons or corporations constitutes the practice of medicine. The Dental Practice Act did so declare. The Medical Practice Act contains no such provision, and the appellant expressly excludes dental care from its contracts.

The Merchant's Protective Corporation case, *supra*, is likewise not controlling. The evidence in that case showed that the corporation contracted to hire attorneys to render legal advice to members of the corporation. It attempted to justify its action, according to the opinion of the court, upon the ground that "it is merely an agency for the bringing of attorneys and clients together and is not itself engaged in practicing law." It was held that this contention was not supported by the facts in that under its articles and contracts the corpo-

ration itself, through attorneys, purported to give legal advice. The implication of the opinion is that if the corporation were in fact an agency which for a fee brought attorneys and clients together, its activities would have been within the law.

The present case involves a factual and legal situation fundamentally different from the contract for legal services. Here the corporation is acting as an agency for bringing the doctor and patient together. In addition it underwrites or insures the cost of such medical care. The doctor in caring for the insured is not rendering medical care on behalf of the corporation. When the doctor starts treatment of the member, the relationship of doctor and patient, with all that such a relationship implies, is created. The situation is legally no different from that where A (who may be a layman or a corporation) secures medical services for B from C, a duly licensed physician, C agreeing to look solely to A for his fee. Could it be successfully contended that A is practicing medicine? I think not. As I read the articles of incorporation and the contracts here involved the corporation does not directly or indirectly agree to perform any medical service; it merely agrees to pay for it when rendered by persons duly licensed to render it. It is true that the member does not have unlimited choice in the selection of a doctor, and that he must select a physician approved by the corporation. But there is nothing in the stipulated facts indicating that the corporation directly or indirectly supervises the doctors in the professional service rendered the member.

There are cases in this state and elsewhere recognizing that, in the absence of a statute providing to the contrary, a corporation or a layman may lawfully employ a doctor to care for its patrons or members. These cases hold that practices substantially similar to those here involved do not constitute the unlawful practice of medicine. In *Renwick* v. *Phillips*, 204 Cal. 349 [268 Pac. 368], it was held that a storekeeper may employ a person licensed under the Medical Practice Act to treat his patrons. In that case the Board of Medical Examiners had revoked the license of Dr. Renwick upon the ground that he had aided and abetted one Roy Finney, a lay person, to practice medicine. This court stated: ''The petitioner (Renwick) was a licensed chiropodist. The said Roy Finney conducted a chiropodist parlor,

equipped with a variety of foot remedies and appliances which he prepared and sold there. He employed the petitioner and respondent herein to act as a chiropodist in connection with his said establishment and to give such treatment and perform such operations as only could be done by the holder of a regular chiropodist's license so to do. In so far *there was nothing illegal or unprofessional in the relations or conduct of Dr. Renwick in his connection with said Finney at the latter's place of business. . . .*'' This decision was written by Justice Richards, who six years before had written the opinion in the Merchant's Protective Corporation case, *supra.* In *Pilger* v. *City of Paris Dry Goods Co.,* 86 Cal. App. 277 [261 Pac. 328], it was held that ''there can be no doubt that a corporation may undertake to furnish the services of a competent physician or the services of a competent chiropodist''. In *State Electro-Medical Institute* v. *State,* 74 Neb. 40 [103 N. W. 1078, 12 Ann. Cas. 673], the Supreme Court of Nebraska held that although a corporation may not practice medicine, it may contract with its members to furnish them with medical care. The court stated: ''The intention of the law is that one who undertakes to judge the nature of a disease, or to determine the proper remedy therefor, or to apply the remedy, must have certain personal qualifications; and, if he does these things without having complied with the law, he is subject to its penalties. Making contracts is not practicing medicine. Collecting the compensation therefor is not practicing medicine, within the meaning of this statute. No professional qualifications are requisite for doing these things.'' See, also, *State Electro-Medical Institute* v. *Platner,* 74 Neb. 23 [103 N. W. 1079, 121 Am. St. Rep. 706]; *State* v. *Lewin,* 128 Mo. App. 149 [106 S. W. 581].

Respondent and *amici curiae* appearing on its behalf, urge that the plan of the appellant violates public policy. But if the policy were as contended by respondent it would be clearly stated in the pertinent statutes. This the legislature has not seen fit to do. In recent years the subjects of health insurance and group medicine have been the frequent source of discussion and investigation, and both lay and professional opinion concerning them is sharply divided. The need for some such service, particularly for persons of low income, is conceded by all parties to the controversy. The courts,

in the absence of legislation, should not on the ground of public policy place a stumbling-block in the way of working out this problem. It is not a proper function of the courts to thus block the natural growth of social and economic processes.

The attempt of lay associations or corporations to retain doctors for the purpose of rendering medical services to their members in return for the payment of dues or a premium is by no means a modern development. Judicial notice can be taken that for many years fraternal, employee, and hospital associations, and various medical-hospital services have been rendering such services to their members through doctors employed by them. Respondent does not question the propriety of their activities. If this court holds that the plan adopted by appellant is unlawful on the ground urged by respondent, that is, that it permits a corporation to unlawfully practice medicine, it inevitably and necessarily follows that all of such associations are likewise unlawfully practicing medicine. Such a conclusion, adversely affecting the interests of thousands of individuals, should only be reached if compelled by statutory enactment or by clear public policy. Neither is present in the instant case.

It is claimed that the medical profession will be commercially exploited if private corporations interested solely in a profit are permitted to engage in activities such as are here involved. If that is an evil the solution rests with the legislature and not with the courts. It may be added that under the Workmen's Compensation Act insurance companies through doctors employed by them are daily rendering medical service to thousands of injured employees, to the apparent satisfaction of all concerned.

The judgment should be reversed.

Waste, C. J., and Houser, J., concurred.

Rehearing denied. Edmonds, J., and Houser, J., voted for a rehearing.