## GROUP HOSPITAL SERVICE, Inc. v. ARMSTRONG.

### No. 6143.

Court of Civil Appeals of Texas. Amarillo.

March 26, 1951.

Rehearing Denied April 30, 1951.

Adkins, Madden, Folley & Adkins, Amarillo, for appellant.

Merchant, Fitzjarrald & Pope, Amarillo, for appellee.

MARTIN, Justice.

Appellant, Group Hospital Service, Incorporated, issued to appellee, Mel Armstrong, a membership agreement under which appellant stipulated to furnish certain hospitalization benefits to appellee and to his wife. The hospitals in which this hospitalization service was to be furnished were defined as "Member Hospitals" and "Non-Member Hospitals." Under the Membership Agreement, as provided by Section 8, Article 4590a, Vernon's Ann. Civ.St., the Member Hospitals guaranteed the benefits of the certificates of membership issued by the corporation. Appellee's membership agreement provided that a Non-Member Hospital must be registered with the American Medical Association. As a condition to registration with the American Medical Association, a hospital was required to meet a number of rules designed to raise the standard of service to the patients in the hospital. One of the rules of the American Medical Association as to the medical staff of a registered hospital provided, "osteopaths, chiropractors, and other non-medical practitioners may not be permitted to use the facilities of hospitals desiring to conform to these standards."

On the 4th day of July, 1949, Mel Armstrong held Policy No. 469962 with Group Hospital Service, Incorporated, which entitled him and his wife to the benefits as agreed upon therein. On this date, appellee's wife suffered some type of stroke which was defined by the physicians as cerebral hemorrhage. After some discussion by appellee and his wife, Mrs. Armstrong was carried to an Osteopathic Hospital and was there treated by Dr. Lester J. Vick. Dr. Vick studied at Kirksville College of Osteopathy and held a license to practice medicine in Texas. Dr. Vick was a licensed osteopath but did not hold an M. D. degree.

Upon completion of hospitalization in the Osteopathic Hospital, the expense of such hospitalization and treatment was submitted in a claim to the appellant, Group Hospital Service, Incorporated. It is conceded that the Osteopathic Hospital was not registered with the American Medical Association and that Dr. Vick was not permitted to practice in hospitals registered with the American Medical Association. The appellant denied liability under the hospitalization agreement by reason of the provision in the membership agreement that the corporation was only liable for services in Member Hospitals and Non-Member Hospitals as defined in the membership agreement, and that the Osteopathic Hospital was neither a Member nor a Non-Member Hospital.

Appellee sued appellant, alleging that the Osteopathic Hospital where his wife was treated was a Member Hospital within the terms of his agreement and that appellant was liable for the full benefits as provided for in the Membership Agreement. In the alternative, appellee alleged that the Osteopathic Hospital was within the terms of a Non-Member Hospital and that the corporation was liable under the policy as to

services in a Non-Member Hospital. In arriving at a decision on the issue here, it must be borne in mind, as stated by the appellee, that this is not a suit between appellant and doctors of osteopathy, but is a suit by a member of the Hospitalization Group seeking to recover benefits and indemnities due him under the terms of a contract.

The trial court held that the Osteopathic Hospital was not within the terms of a Member Hospital and denied liability under this phase of the contract. Neither appellant nor appellee questioned this ruling of the trial court. The court further held that the definition of a Non-Member Hospital, under the facts and circumstances of this case, resulted in the defendant corporation controlling, or attempting to control, the relations existing between the plaintiff and his or his wife's physician, thus restricting the right of the plaintiff and his wife to obtain the services of a licensed doctor of medicine of their choice and was consequently in violation of Section 5, Article 4590a, supra. The trial court permitted a recovery of the benefits provided for as to Non-Member Hospital care in the amount of $195.

Appellant perfected an appeal asserting five points of error were committed in the cause. Appellee countered with five points as sustaining the trial court's ruling. Appellant and appellee conceded that the appeal concerns chiefly, if not solely, the construction and interpretation of Article 4590a. This statement of the parties to this cause is correct and the appeal could be further narrowed to the sole question of whether the contract between appellant and appellee in stipulating that Non-Member Hospitals were required to be registered with the American Medical Association violated the provisions of Section 5, Article 4590a. Other sections of the Article shed some light on an interpretation of Section 5 and are therefore discussed herein.

As stated by the parties herein, the authorities cited in the case are of little assistance in arriving at a correct solution of the cause in that they involve either the legality of a hospital excluding osteopaths

as in Harris v. Thomas, Tex.Civ.App., 217 S.W. 1068, cited by both appellant and appellee, or the proposition of illegal practice of medicine by a corporation, as found in People ex rel. State Board of Medical Examiners v. Pacific Health Corporation, Inc., 12 Cal.2d 156, 82 P.2d 429, 119 A.L.R. 1284, as cited by the appellant. The validity of Article 4590a, supra, as to that section prohibiting the corporation from restricting the right of the patient to obtain the services of any licensed doctor of medicine is not put in issue, so we have solely the question of whether the membership agreement is in violation of the provisions of Section 5, Article 4590a.

It must first be recognized in the light of Harris v. Thomas, supra, and Hayman v. City of Galveston, 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714, that a hospital has the power to enact rules governing the admission of physicians to practice therein and to prescribe the necessary qualifications for such physicians. Therefore, the hospital rules excluding appellee's physician were valid and within the powers held by such hospitals under the rulings of the courts of the State of Texas. These valid rules of the hospital were the sole bar to appellee calling in her physician at any of the Member or Non-Member Hospitals as defined by the agreement of the parties. The appellant had nothing whatever to do with the making of the rules of the hospitals chosen as either Member or Non-Member Hospitals nor with the enforcement of such rules.

Let us further examine Article 4590a as to determining whether appellant was violating Section 5 thereof, or any section of the Article, or was in fact complying with the same. Examining Article 4590a, as to its specific provisions, we find in Section 2 the following: "Such corporations when organized shall be authorized to accept applicants, who may become members of said corporations furnishing group hospital service *under a contract,* which shall entitle each member to *such hospital care* for such period of time *as is provided therein".*

Can it be said that this section does not give the right to the parties to contract as to the provisions for such hospital care?

Section 3 provides: "\* \* \* in consideration of the payment by such members of a definite sum for hospital care and services *so contracted to be furnished"*. The statute, under this section, most certainly contemplated the contracting for services to be furnished by the corporation. Further examining Article 4590a, it would be difficult to conceive out of the language in Section 4 anything other than the rights of the parties to contract as to such hospital care as they might agree upon. The language of this section is deemed a sufficient discussion in itself. "Sec. 4. Such corporations shall have the authority to contract with hospitals charging for services rendered, in such manner as to assure to each person holding a contract of said corporation the furnishing of *such* hospital care *as may be agreed upon in the contract between said corporation and said member"*.

We next turn to Section 7 for another clear expression in the statute: "Such corporation shall, \* \* \* submit to the State Insurance Commission a plan of operation, together with a schedule of its dues to be charged and *the amount of hospital service contracted to be rendered"*.

Certainly this provision could mean nothing other than that the corporation had the right to limit the amount of hospital service by its contract. It can hardly be contended that the limiting of hospital service to hospitals registered with the American Medical Association is in contravention of any of the above sections. In fact it might be more soundly observed that these sections authorize the fixing of service by the contract as found in this case.

Appellee contends that the provision in the contract of appellant and appellee requiring Non-Member Hospitals, as a minimum requirement, to be registered with the American Medical Association, is in violation of Section 5, Article 4590a, and that this clause in the contract of appellant and appellee resulted in the corporation controlling the relation existing between the member and his or her physician and as restricting the right of the appellee to obtain the services of any licensed doctor of medicine. In the light of this contention, Section 5 will be reviewed in detail here as it is the foundation of the judgment rendered in the trial court.

█ Certain accepted facts should be recognized prior to a discussion of the contested issue in this cause. Article 4590a does not attempt to compel appellant corporation to enter into a membership contract with any hospital nor does it attempt to compel any hospital to enter into a contract with the appellant corporation. Thus appellant had the right to contract with any hospital, or group of hospitals, with whom it chose to deal with as Member Hospitals as was found by the trial court. This ruling of the trial court is clearly authorized under Article 4590a and it is observed that appellee found no fault with such ruling.

It must be further accepted that nowhere in the application of appellee, or in the contract of membership as issued to appellee, is found any expression that might be interpreted as evidence that the corporation was attempting to practice medicine in any manner or to furnish to the appellee a physician or any medical service. It is likewise significant, and an accepted fact, that there is not to be found in appellee's application, or in his contract of membership, any express contract provision prohibiting osteopaths, or any other type of practitioner, from treating or serving any member as hospitalized in either a Member Hospital or in a Non-Member Hospital.

The following clause in Section 5 is first observed and the language is as follows: "\* \* \* but said corporation shall *confine its activities* to rendering hospital service *only* through *such type* of hospitals with whom it has contracts." If we are to give any effect to this clear provision of the statute, it is evident that a limitation is being placed on the activity of the corporation. What is the limitation so placed? The answer is evident that the corporation shall render hospital service *only* through *such type* of hospitals *with whom it has contracts.* And the final question would be, "What *type* of hospitals does Group Hospital Service, Incorporated, have contracts with?" In the case at bar it is uncontro-

verted that Group Hospital Service, Incorporated, has contracts *only* with hospitals registered with the American Medical Association. If the corporation followed the statute then it should "confine its activities to rendering hospital service *only* through such type of hospitals," to wit, hospitals registered with the American Medical Association. By like construction, if the hospital contracted with Osteopathic Hospitals as Member Hospitals it should confine its activities to rendering hospital service only through osteopathic type hospitals. Thereby, corporations for hospitalization might be formed to make contracts with Member Hospitals of any type desired and then said corporation should render hospitalization service only through such type of hospitals. Thus a member could contract with a view to receiving such type of hospital service as he might desire under his contract—either with hospitals of the American Medical Association or with Osteopathic Hospitals, or otherwise. (Italicized portions of statute above quoted are supplied).

█ Since Group Hospital Service, Incorporated, has contracts only with hospitals registered with the American Medical Association, which right to so contract is permissible under Article 4590a, it would clearly appear that the corporation was not contracting as. to hospitalization service in violation of the statute but was, in fact, contracting strictly within the statute by "confin[ing] its activities to rendering hospial service *only* through such type of hospitals with whom it has contracts." In concluding this discussion of Section 5, it is not deemed necessary to cite Webster's dictionary, or any like authority, as to the meaning of such commonly used words as "only" and "type."

In the light of the above discussion of Section 5, it would follow that Section 9 as referring to "any hospital other than the hospitals with which said corporation shall have contracted" refers to hospitals furnishing service other than the Member Hospitals. The use of the word "any" is applicable in that under the statute the corporation may contract with such type of hospitals with whom it has contracts and

this might mean Osteopathic Hospitals, Medical Hospitals, Member Hospitals of the American Medical Association or any such type of hospital with whom the corporation had contracts. The word "any" refers to any such hospitals as within the limitation and direction set forth in Section 5, Article 4590a, R.C.S.

Although not raised in this cause, another material element under the principle of the right to contract is contained within any interpretation of Article 4590a, R.C.S. It is apparent that under Section 8 of the Article the Member Hospitals, upon entering a contract with the Group Hospital Service, Incorporated, underwrite, or guarantee, the benefits of the certificates of membership issued by the corporation. "Said hospitals shall guarantee the benefits of the certificates of membership issued by the corporation." It must be conceded that in executing the contract under which the Member Hospital guaranteed all benefits provided for in the Membership Agreement that such Member Hospital entered the contract in reliance upon the terms of the contracts of membership agreed upon by Group Hospital Service, Incorporated, and by the member. Since the appellant and appellee contracted that the benefits would arise only through hospitals registered with the American Medical Association, can the contract between Group Hospital Service, Incorporated, and its Member Hospital be extended to bind Member Hospitals to guarantee the benefits under certificates and provisions not issued by the corporation? A Member Hospital contracts to guarantee the benefits only in hospitals which are members of the American Medical Association. Is its express liability under contract to be extended by court construction of a statute to a guarantee of the benefits in any hospital in the world?

Group Hospital Service, Incorporated, is a non-profit corporation organized for the purpose of rendering benefit to its members. This brings the organization within the rule stated by Appleman on Insurance, Section 9: "It is, for example, apparent that where the system of service sought to be rendered applies to a particular group, especially where that group

organizes itself for the purpose of receiving medical and hospital service, and all contribute toward that end, that the courts will exert every effort to sustain that intention. This result is particularly apparent where it appears that the corporation was not organized for a profit motive, but rather of rendering benefits to its component members."

It may be summarized that any construction holding that the membership agreement is in contravention of Section 5, Article 4590a, by reason of the corporation limiting Non-Member Hospitals to those registered with the American Medical Association will result in a paradoxical construction of the entire Article. Article 4590a permits the corporation to contract with Member Hospitals as it may see fit with the provision that such Member Hospitals shall guarantee the benefits as agreed upon in the policy. Apparently none of the parties to this litigation seriously contend that the corporation does not have the free right to contract with any type of Member Hospital as it may see fit as ruled by the trial court. In this cause it is shown that the corporation saw fit to contract as to Member Hospitals only with members registered with the American Medical Association. No sound contention can be made that such contract is prohibited by Article 4590a. The principal contention in this cause is that the corporation, by placing a clause in its membership agreement defining Non-Member Hospitals as only those registered with the American Medical Association, attempted to control the relations existing between a member and his or her physician and thereby restricted the right of the patient to obtain the services of a licensed doctor of medicine. Thus, looking at the entire situation in the light of the statute and under the elements as not contested by, if not conceded by, appellee, it follows that had Mrs. Armstrong been hospitalized in a Member Hospital, though she was prohibited by the rules of such Member Hospital from securing the services of an osteopathic doctor, the contract would not be in violation of Section 5, Article 4590a, R.C.S., but would be clearly within the right of the corporation to contract with Member Hospitals freely as it saw fit. But, were Mrs. Armstrong hospitalized in a Non-Member Hospital, operating under the same rules of the American Medical Association, appellee contends that the contract would be in violation of Section 5, Article 4590a, by reason of the stipulation of the parties that Non-Member Hospitals were required to be registered with the American Medical Association. Such a construction as to this contract provision under Section 5 leads to the conclusion that the corporation, by contracting with Member Hospitals, may legally, under the statute, limit its furnishing of hospitalization service through only Member Hospitals of the American Medical Association and at the same time by a like limitation expressed in its contract as to Non-Member Hospitals be held as contracting in violation of the statute as to Non-Member Hospitalization. Thus a member, by his mere choice of either a "Member Hospital" or of a "Non-Member Hospital," may place his contract with the corporation either within the statute or in violation of the statute. Such a construction of Article 4590a, R.C.S., does not appear to be sound or prone to result in an even administration of the provisions of the statute.

Since Group Hospital Service, Incorporated, as a non-profit organization entered into a written contract with appellee to furnish hospitalization benefits to appellee and to his wife through Member Hospitals who were registered with the American Medical Association and has confined its activities to rendering hospital service only through such type of hospitals, the fact that such type of hospitals have valid rules which might exclude certain physicians will not place the membership agreement executed by appellee and appellant in violation of any section of Article 4590a, R.C.S.

The judgment of the trial court is reversed and judgment is rendered for the appellant.