BILL LOCKYER Attorney General ANTHONY S. DA VIGO Deputy Attorney General
THE HONORABLE MARTIN GALLEGOS, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
May a non-professional corporation, known as a management services organization, enter into an agreement with a labor union to select, schedule, secure, and pay for radiology diagnostic services ordered by the union's physician for union members and charge the union a fee for its management services?
 CONCLUSION
A non-professional corporation, known as a management services organization, may not enter into an agreement with a labor union to select, schedule, secure, and pay for radiology diagnostic services ordered by the union's physician for union members and charge the union a fee for its management services.
 ANALYSIS
Essentially, we are asked whether a corporate entity unlicensed to practice medicine may, for a fee, select, schedule, secure, and pay for radiology diagnostic services ordered by a physician for members of a labor union responsible for obtaining medical care for its members.[1]
We conclude that such an entity, known as a management services organization ("MSO"), would be engaged in the unlawful practice of medicine if it were to perform its duties under its contract with the labor union.
The activities to be performed by the MSO would include selecting a radiology site with the appropriate imaging equipment and qualified operators of the equipment, as well as selecting a qualified and duly licensed radiologist to view the films and prepare an interpretive report.
We first note that diagnosis by any method, device, or procedure is an integral aspect of the practice of medicine. (Bus. Prof. Code §§2038, 2052, .)[2] Adequate instruction in radiology is a prerequisite for licensure in this state to practice medicine. (§ 2089.) We believe that the selection of a radiology site with appropriate equipment and operational personnel best suited for the performance of a diagnostic radiology study of a patient's particular physical disorder, as well as the selection of a qualified radiologist to view and interpret the films, would involve the exercise of professional judgment and evaluation as part of the practice of medicine.
While certain of the tasks set forth above, when observed in isolation, may be deemed primarily commercial in nature, they may not be so considered in the context of a professional practice. In Marik v. Superior Court (1987) 191 Cal.App.3d 1136, the court rejected the appointment of a retired judge to serve as the interim director of a medical corporation, observing in part: "In a professional corporation, it is not always possible to divide the `business' side of the corporation from the part which renders professional services; `[t]he subject is treated as a whole.' [Citation.]" (Id., at p. 1140.) The court explained by way of example:
 ". . . [T]he prospective purchase of a piece of radiological equipment could be impacted by business considerations (cost, gross billings to be generated, space and employee needs), medical considerations (type of equipment needed, scope of practice, skill levels required by operators of the equipment, medical ethics), or by an amalgam of factors emanating from both business and medical areas. The interfacing of these variables may also require medical training, experience, and judgment." (Id., at p. 1140, fn. 4.)
In addition to the selection, scheduling, and securing of the technical and professional aspects of the radiology services to be rendered, the MSO would pay for the radiology services and profit by adding a fee for its own management services. This financial aspect of the arrangement would be a further intrusion into the relationship between the physician and patient. In Painless Parker v. Board of Dental Examiners (1932)216 Cal. 285, 296, the court carefully noted that the law does not divide the practice of a profession into a business side which may be conducted by an unlicensed person and a separate side which requires a license. Such a division would be impractical and would allow the unlicensed person to engage in conduct not permitted by the licensee. (See also Garvai v. Board of Chiropractic Examiners (1963) 216 Cal.App.2d 374, 378
(1963); 57 Ops.Cal.Atty.Gen. 231, 233 (1974); 55 Ops.Cal.Atty.Gen. 103, 107 (1972).)
Accordingly, we believe that the proposed contractual arrangement between the MSO and the labor union would involve the practice of medicine by the MSO. It remains to be determined whether such an arrangement would be authorized or prohibited in this state.
The practice of medicine in California is authorized by a physician's and surgeon's certificate. (§ 2051.) Generally, only natural persons may be licensed under the Medical Practice Act. (§2032.) It is unlawful to practice or attempt to practice medicine without a license, except as otherwise provided by law. (§§2052, 2053.) With respect to corporations and other legal entities, section 2400
provides in part as follows: "Corporations and other artificial entities shall have no professional rights, privileges, or powers." See 57 Ops.Cal.Atty.Gen.231, supra, at p. 232; 55 Ops.Cal.Atty.Gen. 39, 40 (1972); 54 Ops.Cal.Atty.Gen. 126, 127 (1971).
We have on numerous occasions restated the underlying grounds for the proscription against the practice of medicine by a corporate entity: first, the presence of a corporate entity is incongruous in the workings of a professional regulatory licensing scheme which is based on personal qualification, responsibility, and sanction; second, the interposition of a lay commercial entity between the health professional and the patient would give rise to divided loyalties on the part of the professional and would destroy the professional relationship that is based on trust and confidence. (65 Ops.Cal.Atty.Gen. 223, 225 (1982); 63 Ops.Cal.Atty.Gen. 723, 732-733 (1980); 39 Ops.Cal.Atty.Gen. 155, 156-157 (1962).) In Marik v. Superior Court, supra, 191 Cal.App.3d 1336, the court recognized:
 ". . . the concerns underlying the public policy against permitting lay persons to exercise control over decisions made by healing arts practitioners: that laymen, who are not bound by the ethical standards governing the profession, might seek to enhance the corporation's `commercial advantage' rather than conform to professional strictures. [Citations.]" (Id., at p. 1139.)
Here, the MSO would be a non-professional corporation not licensed to practice medicine. Its proposed activities would constitute the practice of medicine and would be generally prohibited, but would the activities come within any exception to the prohibition against the practice of medicine by a corporate entity?
Section 2400 provides:
 ". . . the Division of Licensing may in its discretion . . . grant approval of the employment of licensees on a salary basis by licensed charitable institutions, foundations, or clinics, if no charge for professional services rendered patients is made by any such institution, foundation, or clinic."
The MSO's proposed activities would not come within this statutory grant of authority, nor would its activities be authorized as a clinic operated primarily for the purpose of medical education by a public or private nonprofit university medical school (§ 2401, subd. (a)), a clinic operated by a nonprofit corporation as an entity organized and operated exclusively for scientific and charitable purposes and that satisfies specified requirements (§ 2401, subd. (b)), or a medical corporation, provided that its shareholders, officers, directors, and employees who are physicians are in compliance with other applicable provisions of law (§§ 2402,2406).[3]
In People v. Pacific Health Corp. (1938) 12 Cal.2d 156, 160, the court specifically examined two exceptions to the rule against the corporate practice of medicine for "philanthropic associations" such as "fraternal, religious, hospital, labor and similar benevolent organizations furnishing medical services to members":
 "In nearly all of them, the medical service is rendered to a limited and particular group as a result of cooperative association through membership in the fraternal or other association, or as a result of employment by some corporation which has an interest in the health of its employees. The public is not solicited to purchase the medical services of a panel of doctors; and the doctors are not employed or used to make profits for the stockholders. In almost every case the institution is organized as a nonprofit corporation or association. Such activities are not comparable to those of private corporations operated for profit and, since the principal evils attendant upon corporate practice of medicine spring from the conflict between the professional standards and obligations of the doctors and the profit motive of the corporation employer, it may well be concluded that the objections of policy do not apply to nonprofit institutions. This view seems almost implicit in the decisions of the court and it certainly has been the assumption of the public authorities, which have, as far as we are advised, never molested these organizations."
The two exceptions identified by the court involve nonprofit, philanthropic corporations or associations providing services to their members and nonprofit corporations having an interest in the health of their employees. (See 62 Ops.Cal.Atty.Gen., supra, at p. 320; 55 Ops.Cal.Atty.Gen., supra, at p. 40; 54 Ops.Cal.Atty.Gen. supra, at p. 128.) Neither exception would be applicable here.
In addition to the foregoing exceptions, the Legislature has authorized the licensing of health care service plans under the Knox-Keene Health Care Service Plan Act of 1975 (Health Saf. Code, §§1340-1399.76). The purpose of this legislation is set forth in Health and Safety Code section1342:
 "It is the intent and purpose of the Legislature to promote the delivery of health and medical care to the people of the State of California who enroll, in or subscribe for the services rendered by, a health care service plan or specialized health care service plan by accomplishing all of the following:
 "(a) Assuring the continued role of the professional as the determiner of the patient's health needs which fosters the traditional relationship of trust and confidence between the patient and the professional.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
Such a plan "shall not be deemed to be engaged in the practice of medicine." (Health Saf. Code, § 1395, subd. (b).) Here, the MSO would not qualify as a health care service plan.
It is apparent that the proposed arrangement between the MSO and the labor union would not fall within any of the exceptions to the proscription against the unlicensed practice of medicine by a corporate entity. In 55 Ops.Cal.Atty.Gen., supra, at page 107, we declared that "it is the view of this office that any reevaluation of the long standing proscription against the unlicensed corporate practice of medicine in any form should and must fall within the exclusive province of the Legislature."
It is concluded that a non-professional corporation, known as an MSO, may not enter into an agreement with a labor union to select, schedule, secure, and pay for radiology diagnostic services ordered by the union's physician for union members and charge the union a fee for its management services.[4]
[1] While the question specifically refers to a labor union, the proposal could involve any fraternal, benevolent, or similar organization that is responsible for obtaining medical care for its members.
[2] Undesignated section references herein are to the Business and Professions Code.
[3] We have consistently expressed the view that a corporation is not exempt from the prohibition against the unlicensed practice of medicine simply because it is organized under the nonprofit corporation law. (62 Ops.Cal.Atty.Gen. 317, 320-321 (1979); 54 Ops.Cal.Atty.Gen., supra, at p. 128 ["Of course, the fact alone that a hospital is incorporated under section 9200 of the Corporations Code, pertaining to nonprofit corporations (see now section 5000), will not preclude an action against it for violation of the State Medical Practice Act."].)
[4] In view of the conclusion reached herein, we have no occasion to consider a distinct but related issue whether the proposed arrangement would constitute a violation of Health and Safety Code section445, prohibiting referrals for profit to any physician or health-related facility.