205 So.2d 11 (1967)
Joseph C. RUSH, Appellant,
v.
CITY OF ST. PETERSBURG, Florida, a Municipal Corporation, and Robert N. Price, Appellees.
No. 67-224.
District Court of Appeal of Florida. Second District.
December 13, 1967.
Rehearing Denied January 10, 1968.
*12 John C. Dew, of Harris, Barrett, Dew & Sieber, St. Petersburg, for appellant.
Carl R. Linn, Asst. City Atty., St. Petersburg, for appellee City of St. Petersburg.
Gardner W. Beckett, of Nelson, Beckett & Nelson, St. Petersburg, for appellee Robert N. Price.
PIERCE, Judge.
This is an appeal by Joseph C. Rush, a medical doctor, plaintiff below, from a dismissal with prejudice of his second amended complaint.
Plaintiff's second amended complaint was brought on behalf of himself individually and of all others similarly situated, which class allegedly consisted of all medical doctors licensed to practice medicine in the State of Florida, specializing in Radiology, who were on the staff of Mound Park Hospital in St. Petersburg, Florida. The complaint sought to have declared null and void a contract between the City of St. Petersburg, as owner and operator of Mound Park Hospital, and Robert N. Price, defendants named therein, relative to the providing of radiological service at Mound Park Hospital. The complaint further sought to enjoin the City from entering into any other similar type of contract.
Count I of the complaint alleged that under the terms of the contract between the defendants, the professional medical services of Robert N. Price were purveyed by the hospital. Plaintiff also alleged that Dr. Price was an agent or employee of the City, and as a result the hospital was engaged in the illegal "corporate practice of medicine".
*13 Count II alleged that under the terms of the contract, Dr. Price handled all "unassigned" radiological cases at Mound Park Hospital. The "unassigned" cases are those in which no particular radiologist is specified by the patient or by the physician having the patient admitted to the hospital. Plaintiff further alleged that "unassigned" cases constituted 99% of the radiological business at Mound Park Hospital. Allegedly, as a result of the contract plaintiff and the others of his class suffered discrimination by being effectively denied the right to participate in the "unassigned" radiology cases.
In dismissing, upon motions, the second amended complaint with prejudice, the Court ruled that both Count I and Count II failed to state a cause of action, and also that plaintiff was not a proper party to bring suit to enjoin the unlicensed practice of medicine.
This case presents questions unique in this State's judiciary. We find no other instance where a licensed physician, and a member of a hospital staff, has sought to enjoin a fellow physician and a municipality on the ground that performance of a contract results in the illegal corporate practice of medicine by the municipally owned hospital.
First, we seek to determine whether the subject contract is void on its face for failure to conform to the requisites of a legal contract. No question arises as to the legal capacity of the parties defendant, one a corporate entity and the other an individual, to enter a binding contract; nor must the contract fall for lack of consideration or mutual benefit. The only doubtful element is whether by its terms the contract is in contravention of public policy. We find that on its face it is not. Whether performance of the contract adversely affects the public welfare will be more fully explored.
In discussing legality versus illegality of the contracts, 7 Fla.Jur., Contracts § 58, says that "the test is whether the agreement in full operation will be injurious to the public welfare." And further that "unless, however, a contract is illegal on its face, there is a presumption of its legality * * *" The area of public policy is a broad one and its borders are ill-defined, but here we need deal only with simple issues.
(1) Was entering into a contract with Dr. Price to provide round-the-clock radiology service at Mound Park Hospital an unreasonable exercise of power, express or implied, vested in the City of St. Petersburg to promote the public welfare?
F.S. Sec. 180.06, F.S.A. says:
"Any municipality * * * organized for the purposes contained in this chapter, is authorized * * * (7) to construct * * *, hospitals, * * * to maintain, operate and repair the same, and to construct and operate in addition thereto all machinery and equipment; * * *" (Emphasis supplied).
It appears that authority to maintain and operate a public hospital would subsume a duty to comply with the standards set forth in Ch. 395, F.S.A. for hospital licensing and regulation. At the very outset of said Chapter is the following:
"395.01 Definitions
As used in this chapter: (1) `Hospital' means any establishment that offers: (a) Services more intensive than those required for room, board, personal services and general nursing care; and (b) Facilities and beds for use beyond twenty-four hours by ten or more non-related individuals requiring diagnosis, treatment or care for illness, injury * * *, and regularly makes available at least: clinical laboratory services, diagnostic x-ray services, * * *" (Emphasis supplied).
In light of the above, therefore, a hospital, in order to be licensed in Florida, must at least provide diagnostic X-ray services on a regular basis. In the absence of *14 statutory guidelines as to the manner in which such radiological service may be provided, we conclude that the City did not exceed its authority in contracting with Dr. Price to assure such service on a full-time basis.
(2) Did performance of the contract result in unauthorized practice of medicine by the hospital or the City?
There is no law precisely on point.[1] However, both the plaintiff, Dr. Rush, and defendant, Dr. Price, cite two related opinions of the Attorney General (1955 Op.Atty.Gen., 055-71 and 1956 Op.Atty. Gen., 056-322). While neither of these possibly conflicting opinions is controlling upon this court, we feel the better reasoned view is found in 056-322, where, in discussing a similar arrangement for radiology services in a County hospital, it was stated: "* * * the department of radiology is an incident to the proper operation of the hospital * * *" and further: "it also appears that the relationship of patient and physician is maintained by the medical staff of the department * * *" The crux of the matter then is whether the relationship between Dr. Price and the patients of Mound Park Hospital has been so destroyed as to allow the hospital to become the medical practitioner.
In Watson v. Centro Espanol De Tampa, 1947, 158 Fla. 796, 30 So.2d 288, a case involving alleged unauthorized practice of medicine by an intern in a hospital, we find the following:
"The test of whether or not one is practicing medicine within the meaning of Section 458.13, is whether or not he holds himself out as being able to `diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition or who shall offer or undertake by any means or method to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition'".
Although Watson v. Centro Espanol De Tampa concerned an individual rather than a corporate entity, there is no reason to deviate from the salutary rule laid down. Applying this "test" it is plain that Mound Park Hospital was not engaged in the unauthorized practice of medicine.
Plaintiff, Dr. Rush, appears to rely on the theory that by virtue of the contract, Dr. Price has become the employee or agent of the City rather than an independent contractor.[2]
In determining whether one is an employee or an independent contractor, the criteria is laid down in 17 Fla.Jur. 176, "Independent Contractor," § 4, as follows:
"Generally, the test of what constitutes independent service lies in the control exercised, the decisive question being who has the right to direct what shall be done, and when and how it shall be done. Again, the right of control as to the mode of doing the work contracted for is the principal consideration in determining whether one is employed as an independent contractor or as a servant. If the person hired is subject to the control or direction of the owner merely as to the result obtained, he is an independent contractor."
The record here contains no showing that either the hospital or the City directs *15 Dr. Price as to methods used in diagnosing or treating patients.
Turning to the more specific question of whether a physician is an independent contractor, we perceive the answer to lie in the existence or non-existence of a doctor-patient relationship. In Hull v. Enid General Hospital Foundation, 1944, 194 Okla. 446, 152 P.2d 693, wherein plaintiff complained of X-ray burns through the negligence of a radiologist and sought recovery from the hospital on the theory of respondeat superior, it was held at text p. 695 of 152 P.2d:
"* * * The relationship of physician and patient was thereby created between the patient and Dr. Miles * * * The defendant [hospital], for a consideration, simply furnished Dr. Miles its X-ray equipment and technicians to use in giving the treatments. The fact that Dr. Miles maintained an office in the hospital and that the defendant collected, and retained a part of, the fee is immaterial."
In the absence of proof, or even allegation, that no physician-patient relationship existed between Dr. Price and the individuals treated by him, we are impelled to conclude that the contested contract is of a purely fiscal nature. However, it may also be said that the economic arrangement facilitates the discharge of the duties of the respective parties, i.e., the obligation of the City to the citizens of St. Petersburg and the obligation of Dr. Price to relieve suffering.
Finding as we do that there was no unauthorized practice of medicine and that the trial Court was correct in dismissing the second amended complaint for failure to state a cause of action, it is unnecessary to go further. However, lest the plaintiff feel that the contentions he so ingeniously advances to show his "standing," individually or in a class suit, to bring this action have been ignored, they will be briefly discussed. The theories so advanced by Dr. Rush are herewith discussed in the order of their appearance in Appellant's Brief, p. 7:
(1) The license allowing a physician to practice is a property right or franchise entitled to protection by a court of equity.
In F.S. Sec. 458.001, F.S.A. it is clearly stated that the practice of medicine is a "privilege" and not a "natural right". Nor do we find violation of any "basic" civil right of Dr. Rush, such as might result from denial of a license to practice or denial of hospital staff privileges.
(2) Plaintiff projects a "nuisance" theory, where the unauthorized practice of medicine is treated as a public nuisance, and the licensed physician is granted injunctive relief upon showing special injury or damage to himself in addition to injury or damage to the public as a whole.
The fallacy of this theory is that Dr. Rush has failed to offer proof of the basic premise, i.e., injury to the public generally, although inferentially Dr. Rush may have suffered "special" damage to his income.
(3) A licensed physician is deemed to have standing as a protector of the public's interest to enjoin the unauthorized practice of medicine. This is called the "public interest" or "public protection" theory.
Again, Dr. Rush has failed to show damage to the public. No law has been violated, nor do we find allegation or suggestion that Dr. Price is incompetent or unqualified in the practice of radiology. Absent such allegations and evidence to support them, we cannot presume violation of the City's obligation to the public weal. Whether a licensed physician, individually or in a class action, could in a proper case seek to enjoin the unlicensed practice of medicine is not at issue here and we pretermit discussion thereof.
*16 The trial Court was correct in finding failure to state a cause of action and lack of "standing". The final order appealed must be and hereby is 
Affirmed.
LILES, C.J., and ALLEN, J., concur.
NOTES
[1] Presumably physicians do not ordinarily litigate to enjoin fellow physicians and hospitals from performance of their joint and several duty to provide essential medical service.
[2] Ravel v. Commissioner, CCH Tax Ct. Mem. 110 (1967) submitted by plaintiff and Rev.Rul. 66-274 submitted by defendant are in apparent conflict on whether a doctor is an employee or independent contractor in circumstances similar to those in the case sub judice. Inasmuch as the holdings are limited to determination of status for federal income tax purposes, they are not decisive of any issues presented here. However, such cases are significant for the light which may be shed upon the prevalence of hospital-physician contracts.