(No. 81059.—

RICHARD B. BERLIN, JR., M.D., Appellee, v.
SARAH BUSH LINCOLN HEALTH CENTER,
Appellant.

*Opinion filed October 23, 1997.*

2

HARRISON, J., joined by MILLER, J., dissenting.

Henry E. Kramer and William A. Sunderman, of Brainard, Bower & Kramer, of Charleston, and Michael Duffy, Adele A. Waller and Terry M. Hackett, of Gardner, Carton & Douglas, of Chicago, for appellant.

D. Cameron Dobbins and Keith E. Emmons, of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellee.

Jack O'Malley, State's Attorney, of Chicago (Patricia M. Shymanski, Randolph M. Johnston and Elizabeth J. Reidy, Assistant State's Attorneys, of counsel), for *amicus curiae* County of Cook.

Thaddeus J. Nodzenski and Mark D. Deaton, of Naperville, for *amicus curiae* Illinois Hospital & Health-Systems Association.

Michael R. Callahan, of Katten, Muchin & Zavis, of Chicago, for *amicus curiae* Metropolitan Chicago Healthcare Council.

Hinshaw & Culbertson, of Chicago (Douglass A. Marshall and Bruce L. Carmen, of counsel), for *amicus curiae* OSF Healthcare System.

Saul J. Morse and Robert John Kane, of Springfield, for *amici curiae* Illinois State Medical Society *et al.*

Michael Ile, of Chicago, for *amicus curiae* American Medical Association.

Jerry P. Clousson and Joseph T. Butz, of Clousson & Butz, of Chicago, for *amici curiae* McLean Area Medical Association *et al.*

William E. Feurer, of Springfield, for *amicus curiae* Illinois State Dental Society.

JUSTICE NICKELS delivered the opinion of the court:

Plaintiff, Richard Berlin, Jr., M.D., filed a complaint for declaratory judgment and a motion for summary judgment seeking to have a restrictive covenant contained in an employment agreement with defendant, Sara Bush Lincoln Health Center (the Health Center), declared unenforceable. The circuit court of Coles County, finding the entire employment agreement unenforceable, granted summary judgment in favor of Dr. Berlin. The circuit court reasoned that the Health Center, as a nonprofit corporation employing a physician, was practicing medicine in violation of the prohibition on the corporate practice of medicine. A divided appellate court affirmed (279 Ill. App. 3d 447), and this court granted the Health Center's petition for leave to appeal (155 Ill. 2d R. 315(a)).

The central issue involved in this appeal is whether the "corporate practice doctrine" prohibits corporations which are licensed hospitals from employing physicians to provide medical services. We find the doctrine inapplicable to licensed hospitals and accordingly reverse.

## BACKGROUND

The facts are not in dispute. The Health Center is a nonprofit corporation duly licensed under the Hospital Licensing Act (210 ILCS 85/1 *et seq.* (West 1994)) to operate a hospital. In December 1992, Dr. Berlin and the Health Center entered into a written agreement whereby the Health Center employed Dr. Berlin to

practice medicine for the hospital for five years. The agreement provided that Dr. Berlin could terminate the employment relationship for any reason prior to the end of the five-year term by furnishing the Health Center with 180 days advance written notice of such termination. The agreement also contained a restrictive covenant which prohibited Dr. Berlin from competing with the hospital by providing health services within a 50-mile radius of the Health Center for two years after the end of the employment agreement.

On February 4, 1994, Dr. Berlin informed the Health Center by letter that he was resigning effective February 7, 1994, and accepting employment with the Carle Clinic Association. After his resignation, Dr. Berlin immediately began working at a Carle Clinic facility located approximately one mile from the Health Center. Shortly thereafter, the Health Center sought a preliminary injunction to prohibit Dr. Berlin from practicing at the Carle Clinic based on the restrictive covenant contained in the aforesaid employment agreement.

The circuit court granted the Health Center's request and enjoined Dr. Berlin from working for any competing health care provider within a 50-mile radius of the Health Center. Subsequently, the appellate court reversed the circuit court's order granting the preliminary injunction because Dr. Berlin's trial court motion for substitution of judge had been improperly denied. The appellate court remanded the action to the circuit court for further proceedings. *Sarah Bush Lincoln Health Center v. Berlin*, 268 Ill. App. 3d 184 (1994).

Before any further action could be taken on the Health Center's request for a preliminary injunction, Dr. Berlin filed a complaint for declaratory judgment and a motion for summary judgment seeking to have the restrictive covenant declared unenforceable. The Health Center filed a cross-motion for summary judg-

ment seeking enforcement of the restrictive covenant. The circuit court, finding the entire employment agreement unenforceable, granted Dr. Berlin's motion for summary judgment and denied the Health Center's cross-motion for summary judgment. Relying primarily on this court's decision in *People ex rel. Kerner v. United Medical Service, Inc.*, 362 Ill. 442 (1936), the circuit court determined that the Health Center, by hiring Dr. Berlin to practice medicine as its employee, violated the prohibition against corporations practicing medicine. A divided appellate court affirmed. The majority agreed with the circuit court's reliance on *Kerner* and further determined that the Health Center did not fall under any exception to its rule. 279 Ill. App. 3d at 455. The dissent contended that any prohibition on corporations engaging in health services did not prohibit the Health Center's employment of Dr. Berlin. 279 Ill. App. 3d at 461 (McCullough, J., dissenting).

This court granted the Health Center's petition for leave to appeal. 155 Ill. 2d R. 315(a). We granted the County of Cook, the Illinois Hospital and HealthSystems Association, the Metropolitan Chicago Healthcare Council, the American Hospital Association, and OSF Healthcare System leave to file *amicus curiae* briefs in support of the Health Center. We granted leave to the American Medical Association, the Illinois State Medical Society, the Illinois State Dental Society, and several regional medical societies to file *amicus curiae* briefs in support of Dr. Berlin's position. 155 Ill. 2d R. 345.

### ISSUES

We are asked to consider two issues: (1) whether the expiration of the two-year term of the restrictive covenant of the employment agreement renders this appeal moot; and (2) whether the "corporate practice doctrine," as set forth by this court in *People ex rel. Kerner v.*

*United Medical Service, Inc.*, 362 Ill. 442 (1936), prohibits licensed hospitals from employing physicians to provide medical services.

## ANALYSIS

In appeals from summary judgment rulings, review is *de novo. Delaney v. McDonald's Corp.*, 158 Ill. 2d 465, 467 (1994). Summary judgment is to be granted only if the pleadings, affidavits, depositions, admissions, and exhibits on file, when reviewed in the light most favorable to the nonmovant, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994); *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996); *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 517-18 (1993). Summary judgment is a drastic means of disposing of litigation and therefore it must be clear that the moving party is truly entitled to such remedy. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 249 (1994).

### Mootness

In a motion filed November 25, 1996, Dr. Berlin contended that, because the two-year term of the restrictive covenant had concluded, there no longer remains any justiciable issue for which this court could grant relief. This motion was taken with the case.

The Health Center argues that this action is not moot because, if this court determines that the employment agreement is enforceable, it has a viable cause of action for breach of contract against Dr. Berlin. In the alternative, the Health Center urges this court to find that this case falls within the public policy exception to the mootness doctrine.

A case becomes moot where the occurrence of events since filing of the appeal makes it impossible for the reviewing court to render effectual relief. *Balmoral Rac-*

*ing Club, Inc. v. Illinois Racing Board*, 151 Ill. 2d 367, 387 (1992). A court should not decide a case where the judgment would have only an advisory effect. *People ex rel. Black v. Dukes*, 96 Ill. 2d 273, 276 (1983). The court would have, in effect, rendered an advisory opinion where a decision on the merits cannot result in appropriate relief to the prevailing party. *Balmoral Racing Club*, 151 Ill. 2d at 387, citing *George W. Kennedy Construction Co. v. City of Chicago*, 112 Ill. 2d 70, 76 (1986). Further, this court does not review cases merely to set precedent or guide future litigation. *Madison Park Bank v. Zagel*, 91 Ill. 2d 231, 235 (1982).

However, where a decision "could have a direct impact on the rights and duties of the parties" there is life in the appeal. *People ex rel. Bernardi v. City of Highland Park*, 121 Ill. 2d 1, 6-7 (1988). In addition, this court has recognized that, where a decision could have "important consequences" for the parties before the court, it is proper to entertain the appeal. *Balmoral Racing Club*, 151 Ill. 2d at 387. A determination in this case that hospitals are prohibited from employing physicians could mean that the Health Center must implement significant changes in its working relationships with its medical staff. See *Balmoral Racing Club*, 151 Ill. 2d at 387-88. Moreover, such a finding could subject both the Health Center and Dr. Berlin to disciplinary action and civil penalties for violations of the Medical Practice Act of 1987 (225 ILCS 60/1 *et seq.* (West 1994)). In contrast, a determination that hospitals may legally employ physicians may mean that the Health Center may have various causes of actions against Dr. Berlin based upon the contract. Therefore, we conclude that the appeal is not moot. We now consider the various contentions regarding the corporate practice of medicine doctrine.

Hospital Employment of Physicians
The Health Center and its supporting *amici curiae*

contend that no judicial determination exists which prohibits hospitals from employing physicians. In support of this contention, the Health Center argues that this court has acknowledged the legitimacy of such employment practices in past decisions. See, *e.g.*, *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511 (1993); *Darling v. Charleston Community Memorial Hospital*, 33 Ill. 2d 326 (1965). In the alternative, the Health Center contends that if a judicial prohibition on hospital employment of physicians does exist, it should be overruled. In support of this contention, the Health Center argues that the public policies behind such a prohibition are inapplicable to licensed hospitals, particularly nonprofit hospitals.

The Health Center also contends that there is no statutory prohibition on the corporate employment of physicians. The Health Center notes that no statute has ever expressly stated that physicians cannot be employed by corporations. To the contrary, the Health Center argues that other legislative actions recognize that hospitals can indeed employ physicians. See, *e.g.*, 210 ILCS 70/0.01 *et seq.* (West 1994) (Emergency Medical Treatment Act); 225 ILCS 62/1 *et seq.* (West 1994) (Osteopathic and Allopathic Healthcare Discrimination Act).

Dr. Berlin and supporting *amici curiae* contend that this court, in *People ex rel. Kerner v. United Medical Service, Inc.*, 362 Ill. 442 (1936), adopted the corporate practice of medicine doctrine, which prohibits corporations from employing physicians. Dr. Berlin concludes that the Health Center, as a nonprofit corporation, is prohibited by the *Kerner* rule from entering into employment agreements with physicians.

Dr. Berlin also disputes the Health Center's contention that public policy supports creating an exception to the *Kerner* rule for hospitals. He argues that, because

no legislative enactment subsequent to the *Kerner* case expressly grants hospitals the authority to employ physicians, the legislature has ratified the corporate practice of medicine doctrine as the public policy of Illinois. At this point, a review of the corporate practice of medicine doctrine is appropriate.

### Corporate Practice of Medicine Doctrine

The corporate practice of medicine doctrine prohibits corporations from providing professional medical services. Although a few states have codified the doctrine, the prohibition is primarily inferred from state medical licensure acts, which regulate the profession of medicine and forbid its practice by unlicensed individuals. See A. Rosoff, *The Business of Medicine: Problems with the Corporate Practice Doctrine*, 17 Cumb. L. Rev. 485, 490 (1987). The rationale behind the doctrine is that a corporation cannot be licensed to practice medicine because only a human being can sustain the education, training, and character-screening which are prerequisites to receiving a professional license. Since a corporation cannot receive a medical license, it follows that a corporation cannot legally practice the profession. See 17 Cumb. L. Rev. at 491; see also *Kerner*, 362 Ill. at 454.

The rationale of the doctrine concludes that the employment of physicians by corporations is illegal because the acts of the physicians are attributable to the corporate employer, which cannot obtain a medical license. See M. Hall, *Institutional Control of Physician Behavior: Legal Barriers to Health Care Cost Containment*, 137 U. Pa. L. Rev. 431, 509-10 (1988). The prohibition on the corporate employment of physicians is invariably supported by several public policy arguments which espouse the dangers of lay control over professional judgment, the division of the physician's loyalty between his patient and his profitmaking employer, and the commercialization of the profession. See A. Willcox,

*Hospitals and the Corporate Practice of Medicine*, 45 Cornell L.Q. 432, 442-43 (1960); see also *Kerner*, 362 Ill. at 455-56, citing *Dr. Allison, Dentist, Inc. v. Allison*, 360 Ill. 638 (1935).

## Application of Doctrine in Illinois

This court first encountered the corporate practice doctrine in *Dr. Allison, Dentist, Inc. v. Allison*, 360 Ill. 638 (1935). In *Allison*, the plaintiff corporation owned and operated a dental practice. When defendant, a dentist formerly employed by plaintiff, opened a dental office across the street from plaintiff's location, plaintiff brought an action to enforce a restrictive covenant contained in defendant's employment contract. Defendant's motion to dismiss the action was granted on the grounds that plaintiff was practicing dentistry in violation of section 18a of the Dental Practice Act of 1933 (Ill. Rev. Stat. 1935, ch. 91, par. 88(1)). In affirming the judgment of the lower court, this court stated:

> "To practice a profession requires something more than the financial ability to hire competent persons to do the actual work. It can be done only by a duly qualified human being, and to qualify something more than mere knowledge or skill is essential. The qualifications include personal characteristics, such as honesty, guided by an upright conscience and a sense of loyalty to clients or patients, even to the extent of sacrificing pecuniary profit, if necessary. These requirements are spoken of generically as that good moral character which is a pre-requisite to the licensing of any professional man. No corporation can qualify." *Allison*, 360 Ill. at 641-42.

Soon after the *Allison* decision, this court further clarified the corporate practice doctrine as it pertains to dentists. In *Winberry v. Hallihan*, 361 Ill. 121 (1935), the plaintiff corporation operated a dental office in which it employed only licensed dentists. Plaintiff filed an action to enjoin the state from enforcing the Dental Practice Act against it, arguing that there was no danger to the

public health in a corporate-owned dental office where all services are performed by licensed dentists. *Winberry*, 361 Ill. at 129.

This court observed that the Dental Practice Act provided that it was unlawful "to conduct, maintain, operate, own or provide a dental office" under the name of a corporation. See Ill. Rev. Stat. 1935, ch. 91, par. 88. In addition, the court observed that section 18(a) of the Act provided that "[n]o corporation shall practice dentistry or engage therein, or hold itself out as being entitled to practice dentistry, *or furnish dental services or dentists* \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1935, ch. 91, par. 88(1).

This court rejected plaintiff's contention that the Dental Practice Act was discriminatory because it denied corporations the right to operate a dental office while there was no such prohibition pertaining to medical clinics and similar professional establishments. In concluding, the court stated that it was "well settled that the State may deny to corporations the right to practice professions"; however, the legislature was not compelled to treat all professions in the same manner. *Winberry*, 361 Ill. at 129-30.

The year following the *Allison* and *Winberry* decisions, this court addressed the corporate practice doctrine as it pertained to medicine. *People ex rel. Kerner v. United Medical Service, Inc.*, 362 Ill. 442 (1936), involved a corporation which operated a low-cost health clinic in which all medical services were rendered by duly-licensed physicians. The State brought a *quo warranto* action against the corporation, alleging it was illegally engaged in the practice of medicine in violation of the Medical Practice Act (Ill. Rev. Stat. 1935, ch. 91, par. 1 *et seq.*). The lower court found the corporation guilty and rendered the judgment of ouster against it. *Kerner*, 362 Ill. at 444-45.

In affirming, this court rejected defendant's contention that the practice of medicine does not encompass the corporate ownership of a health clinic where treatment is rendered solely by licensed physician employees. The court observed that section 24 of the Medical Practice Act specifically prohibits the performance of certain acts without a medical license, including the diagnosis and treatment of human ailments and *the maintenance of an office for the examination and treatment of human ailments.* (Emphasis added.) Ill. Rev. Stat. 1935, ch. 91, par. 25. The court stated that "[t]he legislative intent manifest from a view of the entire [Medical Practice Act] is that only individuals may obtain a license thereunder. No corporation can meet the requirements of the statute essential to the issuance of a license." *Kerner*, 362 Ill. at 454.

Prior to the instant action, apparently no Illinois court has applied the corporate practice of medicine rule set out in *People ex rel. Kerner v. United Medical Service, Inc.*, 362 Ill. 442 (1936), or specifically addressed the issue of whether licensed hospitals are prohibited from employing physicians. We therefore look to other jurisdictions with reference to the application of the corporate practice of medicine doctrine to hospitals.

Applicability of Doctrine to Hospitals in Other
Jurisdictions

Although the corporate practice of medicine doctrine has long been recognized by a number of jurisdictions, the important role hospitals serve in the health care field has also been increasingly recognized. Accordingly, numerous jurisdictions have recognized either judicial or statutory exceptions to the corporate practice of medicine doctrine which allow hospitals to employ physicians and other health care professionals. See, *e.g.*, Cal. Bus. & Prof. Code § 2400 (West 1990) (exception for charitable hospitals); Colo. Rev. Stat. § 25—3—103.7(2)

(West Supp. 1997) (hospitals may employ physicians); *Rush v. City of St. Petersburg*, 205 So. 2d 11 (Fla. App. 1967); *St. Francis Regional Medical Center, Inc. v. Weiss*, 254 Kan. 728, 869 P.2d 606 (1994); *People v. John H. Woodbury Dermatological Institute*, 192 N.Y. 454, 85 N.E. 697 (1908); see generally 17 Cumb. L. Rev. at 494. A review of this authority reveals that there are primarily three approaches utilized in determining that the corporate practice of medicine doctrine is inapplicable to hospitals.

First, some states refused to adopt the corporate practice of medicine doctrine altogether when initially interpreting their respective medical practice act. These states generally determined that a hospital corporation which employs a physician is not practicing medicine, but rather is merely making medical treatment available. See, *e.g.*, *State ex rel. Sager v. Lewin*, 128 Mo. App. 149, 155, 106 S.W. 581, 583 (1907) ("[H]ospitals are maintained by private corporations, incorporated for the purpose of furnishing medical and surgical treatment to the sick and wounded. These corporations do not practice medicine but they receive patients and employ physicians and surgeons to give them treatment"); *State Electro-Medical Institute v. Platner*, 74 Neb. 23, 29, 103 N.W. 1079, 1081 (1905) ("A hospital which is controlled by a corporation, and which receives patients, and contracts to care for them and to furnish them with medical attendance, does not by so doing practice medicine within the meaning of [the Medical Practice Act]"); *State Electro-Medical Institute v. State*, 74 Neb. 40, 43, 103 N.W. 1078, 1079 (1905) ("The intention of the [Medical Practice Act] is that one who undertakes to judge the nature of a disease *** must have certain personal qualifications; and, if he does these things without having complied with the law he is subject to its penalties. Making contracts is not practic-

ing medicine. Collecting the compensation therefor is not practicing medicine within the meaning of this statute. No professional qualifications are requisite for doing these things").

Under the second approach, the courts of some jurisdictions determined that the corporate practice doctrine is inapplicable to nonprofit hospitals and health associations. These courts reasoned that the public policy arguments supporting the corporate practice doctrine do not apply to physicians employed by charitable institutions. See, *e.g., Group Health Ass'n v. Moor*, 24 F. Supp. 445, 446 (D.D.C. 1938) (actions of nonprofit association which contracts with licensed physicians to provide medical treatment to its members in no way commercialize medicine and are not the practice of medicine), *aff'd*, 107 F.2d 239 (D.C. Cir. 1939); *People ex rel. State Board of Medical Examiners v. Pacific Health Corp.*, 12 Cal. 2d 156, 159-61, 82 P.2d 429, 431 (1938) (*en banc*) (same); *Goldwater v. Citizens Casualty Co.*, 7 N.Y.S.2d 242 (N.Y. Mun. Ct. 1938) (charitable hospital corporation sanctioned by law to treat sick is exception to general rule that corporation may not practice medicine), *aff'd*, 36 N.Y.S.2d 413 (N.Y. Sup. Ct. 1939); see generally 45 Cornell L.Q. at 466-79.

In the third approach, the courts of several states have determined that the corporate practice doctrine is not applicable to hospitals which employ physicians because hospitals are authorized by other laws to provide medical treatment to patients. See, *e.g., Rush*, 205 So. 2d 11; *Weiss*, 254 Kan. 728, 869 P.2d 606; *John H. Woodbury Dermatological Institute*, 192 N.Y. 454, 85 N.E. 697; *Republic Reciprocal Insurance Ass'n v. Colgin Hospital & Clinic*, 123 Tex. 31, 65 S.W.2d 286 (1933).

We find the rationale of the latter two approaches persuasive. We decline to apply the corporate practice of medicine doctrine to licensed hospitals. The instant

cause is distinguishable from *Kerner, Allison,* and *Winberry.* None of those cases specifically involved the employment of physicians by a hospital. More important, none of those cases involved a corporation licensed to provide health care services to the general public. See *Weiss,* 254 Kan. at 746, 869 P.2d at 618. Accordingly, we decline to extend the *Kerner* corporate practice rule to licensed hospitals.

The corporate practice of medicine doctrine set forth in *Kerner* was not an interpretation of the plain language of the Medical Practice Act. The Medical Practice Act contains no express prohibition on the corporate employment of physicians.[1] Rather, the corporate practice of medicine doctrine was inferred from the general policies behind the Medical Practice Act. See *Kerner,* 362 Ill. at 454. Such a prohibition is entirely appropriate to a general corporation possessing no licensed authority to offer medical services to the public, such as the appellant in *Kerner.* However, when a corporation has been sanctioned by the laws of this state to operate a hospital, such a prohibition is inapplicable.[2] Accord *Rush,* 205 So. 2d at 13-14; *Weiss,* 254 Kan. at 744-45, 869 P.2d at 617; *John H. Woodbury Dermatological Institute,* 192 N.Y. at 457-58, 85 N.E. at

---

[1]In contrast, the Dental Practice Act, applied by this court in *Winberry* and *Allison,* expressly prohibited a corporation from furnishing dentists and owning and operating a dental office. See Ill. Rev. Stat. 1935, ch. 91, pars. 88, 88(1).

[2]It is noteworthy that this court in *Kerner* observed that the defendant corporation's activities violated section 24 of the Medical Practice Act, which prohibited "the maintenance of an office for the examination and treatment of" afflicted persons without a medical license. *Kerner,* 362 Ill. at 454. In contrast, this same activity by a licensed hospital is expressly sanctioned. See 210 ILCS 85/3(A) (West 1994) (hospital is an institution "devoted primarily to the maintenance and operation of facilities for the diagnosis and treatment or care" of afflicted persons).

698-99; *Republic Reciprocal Insurance Ass'n*, 123 Tex. at 34, 65 S.W.2d at 287.

The legislative enactments pertaining to hospitals provide ample support for this conclusion. For example, the Hospital Licensing Act defines "hospital" as:

> "any institution, place, building, or agency, public or private, whether organized for profit or not, *devoted primarily to the maintenance and operation of facilities for the diagnosis and treatment or care of \*\*\* persons* admitted for overnight stay or longer in order to obtain medical, including obstetric, psychiatric and nursing, care of illness, disease, injury, infirmity, or deformity." (Emphasis added.) 210 ILCS 85/3 (West Supp. 1995).

In addition, the Hospital Lien Act (770 ILCS 35/0.01 *et seq.* (West 1994)) provides "[e]very hospital *rendering service in the treatment, care and maintenance, of such injured person*" a lien upon a patient's personal injury cause of action. (Emphasis added.) Pub. Act 89—280, eff. January 1, 1996 (amending 770 ILCS 35/1 (West 1994)).[3] Moreover, the Hospital Emergency Service Act (210 ILCS 80/0.01 *et seq.* (West 1994)) requires "[e]very hospital \*\*\* *which provides general medical and surgical hospital services*" to also provide emergency services. (Emphasis added.) 210 ILCS 80/1 (West 1994); see also 210 ILCS 70/1 (West 1994) (requires licensed providers of professional health care, including hospitals, to provide emergency medical treatment in life-threatening situations, regardless of patient's ability to pay).

The foregoing statutes clearly authorize, and at times mandate, licensed hospital corporations to provide medical services. We believe that the authority to employ duly-licensed physicians for that purpose is reasonably implied from these legislative enactments. Ac-

---

[3]Compare to the Physicians Lien Act (770 ILCS 80/0.01 *et seq.* (West 1994)), which provides a similar lien to a physician "who renders services by way of treatment to injured persons." 770 ILCS 80/1 (West 1994).

cord *Weiss*, 254 Kan. at 745, 869 P.2d at 618; *Albany Medical College v. McShane*, 66 N.Y.2d 982, 983, 489 N.E.2d 1278, 1279, 499 N.Y.S.2d 376, 377 (1985); *John H. Woodbury Dermatological Institute*, 192 N.Y. at 458, 85 N.E. at 699; *Republic Reciprocal Insurance Ass'n*, 123 Tex. at 33-34, 65 S.W.2d at 287. We further see no justification for distinguishing between nonprofit and for-profit hospitals in this regard. The authorities and duties of licensed hospitals are conferred equally upon both entities.[4] Accord *Weiss*, 254 Kan. at 746, 869 P.2d at 618.

In addition, we find the public policy concerns which support the corporate practice doctrine inapplicable to a licensed hospital in the modern health care industry. The concern for lay control over professional judgment is alleviated in a licensed hospital, where generally a separate professional medical staff is responsible for the quality of medical services rendered in the facility. See 210 ILCS 85/4.5 (West Supp. 1995); 77 Ill. Adm. Code §§ 250.150, 250.310 (1997); see also 45 Cornell L.Q. at 445-46.[5]

Furthermore, we believe that extensive changes in the health care industry since the time of the *Kerner* decision, including the emergence of corporate health maintenance organizations (see 215 ILCS 125/1—1 *et*

---

[4]Notably, the legislature has recently acted to further advance the equality of treatment between nonprofit and for-profit hospitals. Compare 770 ILCS 35/1 (West 1994) (hospital liens provided only for nonprofit or county hospitals) with Pub. Act 89—280, eff. January 1, 1996, amending 770 ILCS 35/1 (West 1994) (recent amendment provides liens for all hospitals).

[5]Moreover, in the instant case, the employment agreement expressly provided that the Health Center had no control or direction over Dr. Berlin's medical judgment and practice, other than that control exercised by the professional medical staff. Dr. Berlin has never contended that the Health Center's lay management attempted to control his practice of medicine.

*seq.* (West 1994) (Health Maintenance Organization Act)), have greatly altered the concern over the commercialization of health care. In addition, such concerns are relieved when a licensed hospital is the physician's employer. Hospitals have an independent duty to provide for the patient's health and welfare. See *Gilbert*, 156 Ill. 2d at 518 (recognizing hospital's duty to review and supervise the medical treatment of a patient); *Darling*, 33 Ill. 2d at 332-33 (recognizing hospital's duty to assume responsibility for the care of its patients); see also 410 ILCS 50/0.01 *et seq.* (West 1994) (Medical Patient Rights Act) (establishing right of patient to receive health care from hospital which is consistent with sound medical practices); 45 Cornell L.Q. at 446.

We find particularly appropriate the statement of the Kansas Supreme Court that "[i]t would be incongruous to conclude that the legislature intended a hospital to accomplish what it is licensed to do without utilizing physicians as independent contractors or employees. \*\*\* To conclude that a hospital must do so without employing physicians is not only illogical but ignores reality." *Weiss*, 254 Kan. at 745, 869 P.2d at 618. Accordingly, we conclude that a duly-licensed hospital possesses legislative authority to practice medicine by means of its staff of licensed physicians and is excepted from the operation of the corporate practice of medicine doctrine.

Consequently, the employment agreement between the Health Center and Dr. Berlin is not unenforceable merely because the Health Center is a corporate entity. The circuit court has not yet adjudicated the substantive merits of the instant employment agreement. Therefore, we remand this cause to the circuit court to proceed with the original action in a manner consistent herewith.

## CONCLUSION

For the reasons stated, the judgment of the appel-

late court affirming the circuit court's award of summary judgment for plaintiff is reversed. The judgment of the circuit court is reversed and the cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Appellate court judgment reversed;*
*circuit court judgment reversed;*
*cause remanded.*

JUSTICE HARRISON, dissenting:

In *People ex rel. Kerner v. United Medical Service, Inc.*, 362 Ill. 442 (1936), this court held that a corporation cannot employ physicians and collect fees for their services because such conduct constitutes the practice of medicine and the practice of medicine by corporations is prohibited. The court based its conclusion on the Medical Practice Act, reasoning that under the statute, a license is required to practice medicine and

> "[t]he legislative intent manifest from a view of the entire law is that only individuals may obtain a license thereunder. No corporation can meet the requirements of the statute essential to the issuance of a license." *Kerner*, 362 Ill. at 454.

More than 60 years have passed since *Kerner* was decided. If the legislature believed that our construction of the Act was erroneous or that the rule announced in *Kerner* should be changed, it could have amended the law to authorize the practice of medicine by entities other than individuals. With limited exceptions not applicable here, it has not done so. To the contrary, it has continued to adhere to the requirements that medicine can only be practiced by those who hold valid licenses from the state (225 ILCS 60/3 (West 1994)) and that only individuals can obtain such licenses (225 ILCS 60/9, 11 (West 1994); 68 Ill. Adm. Code § 1285.20 *et seq.* (1997)).

The legislature is presumed to know the construction the courts have placed upon a statute. When it

amends a statute but does not alter a previous interpretation by this court, we assume that the legislature intended for the amendment to have the same interpretation previously given. *Williams v. Crickman*, 81 Ill. 2d 105, 111 (1980). Moreover, where the legislature has acquiesced in a judicial construction of the law over a substantial period of time, as it did here, the court's construction becomes part of the fabric of the law, and a departure from that construction by the court would be tantamount to an amendment of the statute itself. *Charles v. Seigfried*, 165 Ill. 2d 482, 492 (1995). The power to make such amendments does not lie in the courts. *Independent Voters v. Illinois Commerce Comm'n*, 117 Ill. 2d 90, 100 (1987).

That the legislature has acquiesced in the judiciary's construction of the Medical Practice Act is especially clear given recent developments in the law. Under section 4.9 of the Regulatory Agency Sunset Act (5 ILCS 80/4.9 (West 1994)), the Medical Practice Act was scheduled for repeal on December 31, 1997, unless the General Assembly enacted legislation providing for its continuation (5 ILCS 80/4 (West 1994)). On April 12, 1996, the appellate court filed its opinion in this case, holding under *Kerner* that the Medical Practice Act bars the corporate practice of medicine by hospitals. Subsequent to that decision, the General Assembly passed and the Governor signed new legislation extending the Medical Practice Act until January 1 of the year 2007. The new legislation made no substantive changes to the licensing requirements and included no provisions contrary to the appellate court's holding. See 225 ILCS 60/1 *et seq.* (West 1996). Because the legislature is presumed to know the construction the statute has been given by the courts, its reenactment of the law can only be understood as an endorsement of the construction followed by the appellate court here. The corporate practice of medicine by hospitals is prohibited.

As previously indicated, the Medical Practice Act does contain certain exemptions. By its terms, it does not apply to:

"persons lawfully carrying on their particular profession or business under any valid existing regulatory Act of this State, nor to persons rendering gratuitous services in cases of emergency, nor to persons treating human ailments by prayer or spiritual means as an exercise or enjoyment of religious freedom." 225 ILCS 60/4 (West 1994).

In addition, the Act provides that

"a physician who holds an active license in another state or a second year resident enrolled in a residency program accredited by the Liaison Committee on Graduate Medical Education or the American Osteopathic Association Committee on Post-Graduate Education may provide medical services to patients in Illinois during a bonafide emergency in immediate preparation for or during interstate transit." 225 ILCS 60/3 (West 1994).

Hospitals do not fall within any of these exceptions. The majority argues that additional exceptions can be implied based on other statutes enacted by the General Assembly. It is a fundamental rule of statutory construction, however, that the enumeration of certain things in a statute implies the exclusion of all other things. *In re Estate of Leichtenberg*, 7 Ill. 2d 545, 552 (1956). *Expressio unius est exclusio alterius.* Where, as here, a statute specifies exceptions to a general rule, no exceptions other than those designated will be recognized. *In re Estate of Tilliski*, 390 Ill. 273, 283 (1945); *Allen v. Conken*, 39 Ill. 2d 427, 429-30 (1968).

Wholly aside from this problem, none of the other statutes invoked by my colleagues supports their position. The most that can be said of those statutes is that they authorize hospitals to operate facilities for the diagnosis and care of patients (see 210 ILCS 85/3 (West 1994)) and to make emergency service available (210 ILCS 80/1 (West 1994)) regardless of ability to pay (210

ILCS 70/1 (West 1994)). Hospitals may also employ physician's assistants, provided such assistants function under the supervision of a licensed physician. 225 ILCS 95/7 (West 1994). None of those endeavors, however, requires that hospitals have the power to employ physicians directly or to charge patients for the physicians' services. All may be accomplished by granting staff privileges to duly licensed private physicians, and the Hospital Licensing Act presumes that hospitals will staff their facilities in precisely that way. See 210 ILCS 85/ 10.4 (West 1994).

As noted earlier, the Medical Practice Act provides that it is inapplicable to "persons lawfully carrying on their particular profession or business under any valid existing regulatory Act of this State." 225 ILCS 60/4 (West 1994). Through this exemption, the statute recognizes that activities and enterprises otherwise in violation of the Medical Practice Act may be sanctioned by the General Assembly through separate enactments. In accordance with the exemption, the General Assembly has expressly authorized the employment of physicians by Health Maintenance Organizations (HMOs) under the Health Maintenance Organization Act (215 ILCS 125/1—1 *et seq.* (West 1994)). If the General Assembly had intended to grant the same authority to hospitals, I believe that it would have been similarly straightforward and unambiguous in doing so.

In addition to creating special rules for HMOs, the General Assembly has also decided to allow physicians to employ various forms of business organizations in practicing their profession. Physicians may incorporate in accordance with the Professional Service Corporation Act (805 ILCS 10/1 *et seq.* (West 1994)), they may form corporations to provide medical services under the Medical Corporation Act (805 ILCS 15/1 *et seq.* (West 1994)), they have the right to practice in a professional associa-

24

tion organized pursuant to the Professional Association Act (805 ILCS 305/1 *et seq.* (West 1994)), and they can organize and operate limited liability companies to practice medicine under the recently amended Limited Liability Company Act (805 ILCS 180/1—1 *et seq.* (West 1996)). Again, however, none of these provisions pertains to hospitals, and no inference can be drawn from any of them that the General Assembly intended to alter the prohibition against the corporate practice of medicine by hospitals.

For the foregoing reasons, I agree with the appellate court that the corporate practice doctrine prohibited defendant, Sarah Bush Lincoln Health Center, from entering into an employment agreement with Dr. Berlin. That agreement, including its restrictive covenant, was void and unenforceable. Dr. Berlin's motion for summary judgment was therefore properly granted, and the judgment of the appellate court should be affirmed.

JUSTICE MILLER joins in this dissent.