ANGELIA JACKSON, Plaintiff-Appellant, v. SWEET IDEAS, LTD. PART-
NERSHIP, d/b/a Mr. Bulky's Treats and Gifts, Defendant-Appellee.

Fifth District   No. 5—99—0654

Opinion filed May 11, 2001.

Gene A. Turk, Jr., of Carbondale, for appellant.

No brief filed for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:
Angelia Jackson (plaintiff) filed a two-count complaint against her

former employer, Sweet Ideas, Ltd. Partnership (defendant), doing business as Mr. Bulky's Treats and Gifts (Mr. Bulky's), alleging a failure to accommodate and retaliatory discharge in violation of the Americans with Disabilities Act of 1990 (the Act) (42 U.S.C. § 12101 *et seq.* (1994)). The circuit court of Jackson County granted summary judgment for defendant. Plaintiff now appeals. Plaintiff contends that she presented sufficient evidence to raise a genuine issue of fact as to each essential element of her claims under the Act.

We reverse and remand.

## I. FACTS

Plaintiff was hired by defendant in 1993 and was promoted to manager of the Carbondale store prior to October 27, 1995. In her complaint, plaintiff alleges that on October 27, 1995, she hit her left knee on a display at work and suffered torn cartilage as a result. Plaintiff contends that she has degenerative arthritis. Plaintiff alleges that defendant terminated her employment on July 7, 1997, because of her impairment.

Plaintiff presented work slips signed by Neill Valdes, M.D., indicating that plaintiff was receiving treatment for degenerative arthritis in the left knee. A work slip dated February 27, 1996, indicated that plaintiff could return to work full time, but plaintiff was not to climb ladders, squat, or kneel. A work slip dated June 26, 1997, indicated that plaintiff could work on a routine basis, but it placed permanent restrictions on plaintiff. In addition to the previous restrictions of no climbing ladders or kneeling, Dr. Valdes proscribed prolonged walking or standing. The note also stated that plaintiff should sit down as needed and use a cane.

In her response to the motion for summary judgment, plaintiff directly testified by submitting an affidavit and portions of her deposition. Plaintiff testified that on June 26, 1997, upon instructions from her doctor, she began using a leg brace and a cane at work. Plaintiff testified that as of June 1997 her knee injury limited her walking to one-half block and that her knee would become inflamed after prolonged walking. Plaintiff testified that her knee injury prevents her from dancing, fishing, or mowing her yard.

Although plaintiff's testimony is somewhat unclear on the point, it appears that plaintiff first asked for an accommodation after her visit to Dr. Valdes in February 1996. Plaintiff apparently asked for a stool to sit on and was allowed to place one in a back room. Plaintiff testified that after her June 1997 visit to Dr. Valdes she asked Gloria Lepper, regional manager for defendant, to allow a stool to be placed in the front of the store so she could sit down periodically while working.

According to plaintiff, Lepper responded that plaintiff could no longer work at Mr. Bulky's and should quit.

Plaintiff presented an affidavit from Terri Scott. Scott had been an assistant manager of Mr. Bulky's under plaintiff and became manager after plaintiff's termination. Scott testified that she went to a lunch meeting with Lepper and plaintiff on July 3, 1997. Scott claims that during that meeting Lepper told plaintiff that plaintiff needed to find another job because her disability prevented her from doing her job. Lepper did not elaborate on why she thought plaintiff could no longer do the job. According to Scott, plaintiff responded that all she needed was a stool so that she could sit down from time to time and rest her knee. Lepper then responded that she would check with the home office to see if plaintiff could continue employment.

In its answer to plaintiff's complaint, defendant states in part, "Plaintiff was terminated because she was no longer physically able to perform the duties of her job." In the deposition of plaintiff, defendant questioned plaintiff regarding a walk-through evaluation Lepper had done with plaintiff on July 3, 1997. Plaintiff testified that the evaluation was a routine process in which Lepper would review a form Lepper had filled out while walking through the store. Although the form itself is not in our record, plaintiff testified that the form contained critical comments regarding the inflation of balloon displays, the rotation of bins, the securing of helium tanks with a chain, the reworking of a display of baskets and T-shirts, the training of staff regarding cleaning procedures, dirty floors, and borrowing money from a safe. The completed form was signed by Lepper, Scott, and plaintiff.

Plaintiff testified that she had been a competent worker and could have continued performing her duties even with the restrictions from her injury. Plaintiff described her job in her deposition:

"Q. What were your duties as manager?

A. To make sure the store was ran [sic]. I made schedules, did payroll, food orders, checked in food shipments, scheduled meetings."

Defendant elicited testimony from plaintiff that the maintenance of the store required moving, climbing, bending, and carrying heavy items. Plaintiff testified that as manager she often delegated such duties. Plaintiff contends that in her opinion she could do the job even with the additional restrictions of no prolonged walking or standing. In her affidavit, Scott testified that in July 1997 she received training from a store manager from Evansville, Indiana, who stated that about 70% of her time was spent in the back room and that defendant's Carbondale store also had a back room.

Defendant filed a motion for summary judgment, attaching a

transcript of plaintiff's deposition as an exhibit. The circuit court granted the motion. Plaintiff appealed. Defendant did not file a brief. See generally *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 345 N.E.2d 493 (1976) (a reviewing court can decide the merits of an appeal even without an appellee's brief).

## II. ANALYSIS

██ ██ Although actions under the Act raise questions of federal law, state courts have concurrent jurisdiction with federal courts over claims under the Act. See 42 U.S.C. § 12117 (1994); *Jones v. Illinois Central R.R. Co.*, 859 F. Supp. 1144, 1145 (N.D. Ill. 1994). A summary judgment is to be granted only if the pleadings, affidavits, depositions, and other evidence on file, when reviewed in the light most favorable to the nonmovant, reveal that there is no genuine issue as to any material fact. *Berlin v. Sarah Bush Lincoln Health Center*, 179 Ill. 2d 1, 7, 688 N.E.2d 106, 108 (1997). A summary judgment is a drastic measure, and therefore, it should only be granted when the moving party is truly entitled to such remedy. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 249, 633 N.E.2d 627, 630 (1994). The standard of review of a trial court's grant of a summary judgment is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992). Considering the evidence before the trial court, we conclude that there are genuine issues of fact regarding plaintiff's claims under the Act.

██ Under section 12112(b)(5) of the Act, discrimination includes:

"(5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

(B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5) (1994).

The viability of plaintiff's claims of retaliatory discharge and failure to accommodate revolves around the following issues.

### A. Whether Plaintiff Created a Genuine Issue of Fact as to Whether She Was Disabled

The first issue raised by plaintiff is whether plaintiff had a disability as defined by the Act. Section 12102(2) of the Act defines "disability" as follows:

"(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (1994).

The question of whether someone is disabled is to be determined on a case-by-case basis. *DePaoli v. Abbott Laboratories,* 140 F.3d 668, 672 (7th Cir. 1998).

■ In her brief, plaintiff contends that she has a physical impairment that restricts her major life activities.

"Implementing regulations and guidelines promulgated by the Equal Employment Opportunity Commission *** define 'major life activities' as 'those basic activities that the average person in the general population can perform with little or no difficulty.' [Citation.] ' "Major life activities" include caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working[,] ... sitting, standing, lifting, [and] reaching.' [Citation.] Such activities are considered 'substantially limited' when the person at issue is either unable to perform the activity or is [*sic*] significantly restricted as to the condition, manner[,] or duration for which he can perform these acts, when compared to an average person. [Citations.] In determining whether the disability substantially limits major life activities, the court considers evidence of the nature and severity of the disability, its duration, and whether it will have a permanent or long-term impact. [Citations.]" *Moreno v. Grand Victoria Casino,* 94 F. Supp. 2d 883, 897 (N.D. Ill. 2000).

■ Plaintiff presented documents, from a physician, stating that she was able to work, but she had permanent restrictions to not climb, squat, or kneel. Plaintiff had also recently received restrictions to refrain from prolonged walking or standing and was instructed to sit down as needed. Plaintiff testified she used a leg brace and a cane as a result of her impairment. Federal courts have denied summary judgment when presented with similar evidence of knee injuries that limit walking or standing for long periods of time. See, *e.g., Moreno v. Grand Victoria Casino,* 94 F. Supp. 2d 883, 899 (N.D. Ill. 2000); *DiPuccio v. United Parcel Service,* 890 F. Supp. 688, 693 (N.D. Ohio 1995). Plaintiff has presented sufficient evidence of a disability to create a genuine issue of fact.

### B. Whether Plaintiff Is a Qualified Individual Under the Act

■ In order to be a "qualified individual with a disability" under the Act, plaintiff must be "an individual with a disability who, with or without reasonable accommodation, can perform the essential func-

tions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (1994). The question of whether plaintiff was a qualified individual raises two related issues: (1) whether plaintiff was capable of performing the essential functions of her job and (2) whether plaintiff was actually performing according to the terms of her employment. The court ruled that plaintiff was not a qualified individual under the Act. Defendant argued to the trial court that plaintiff could not perform the essential functions of her job. Plaintiff contends that she was capable of performing the essential functions of the job and performed her job in a satisfactory manner.

Defendant argued that plaintiff could not perform her job. In plaintiff's deposition, defendant elicited testimony that the proper maintenance of the store involved kneeling and climbing ladders. Defendant also elicited testimony from plaintiff that she was the only employee in the store for between 4 to 10 hours during her 45-hour work week.

■ Plaintiff contended that if she had been allowed to use a stool in the front of the store, the additional restrictions of no prolonged walking or standing would not have prevented her from performing the essential functions of her job. Plaintiff testified that she had competently performed her job as manager for approximately two years prior to her termination. Plaintiff testified that the essential tasks of the job were to oversee schedules, payrolls, food orders, and food shipments and to schedule meetings. An affidavit from Scott indicated that 70% of the work could be done from a back office. Plaintiff did testify that the maintenance of the store required lifting and physical moving, but she also claimed that as part of her managerial position she could delegate these functions to others as the need arose. Taken by itself, plaintiff's testimony does not indicate that defendant would have to, as the trial court ruled, "reorganize itself or its operations to accommodate" plaintiff. Defendant presented no evidence outside plaintiff's deposition. There is a genuine issue as to whether plaintiff could perform the job.

A closely related question is whether plaintiff actually performed her job. The Act does not operate as a shield to protect employees who fail to adequately perform their job. *Hedberg v. Indiana Bell Telephone Co.*, 47 F.3d 928, 934 (7th Cir. 1995). However, mere criticism of an employee's performance will not remove the employer's decision from the specter of the Act. Even if there are other factors that influence the employer's decision, the Act imposes liability for retaliatory discharge when, but for the employee's disability, she would not have been terminated. *Pernice v. City of Chicago*, 237 F.3d 783, 786 (7th Cir. 2001); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th

Cir. 1996). At the trial court level, defendant contended that plaintiff was terminated because she did not perform her job. The trial court ruled in part as follows:

> "After having been admonished concerning the problems with her job performance, the problems continued. The natural and logical conclusion is that at least part of the problem was the inability of the plaintiff to effectively oversee the employees and delegate responsibilities."

In plaintiff's deposition, defendant questioned plaintiff regarding an evaluation of plaintiff's store, which had been done shortly before plaintiff's discharge. Plaintiff testified that the evaluation contained critical comments regarding the inflation of balloon displays, the rotation of bins, the securing of helium tanks with a chain, the reworking of a display of baskets and T-shirts, the training of staff regarding cleaning procedures, dirty floors, and borrowing money from a safe. However, there is no testimony indicating that this was the reason for plaintiff's termination or that it was the procedure for defendant to terminate managers when an evaluation had similar results. Further, although plaintiff testified that she had previously been informed these were her responsibilities, there is no evidence as to what, if any, were recurring problems.

Plaintiff contends that she was terminated because of her impairment. Plaintiff contends that she was performing her job competently and that it was routine to be evaluated. A plaintiff may imply a retaliatory discharge under the Act by proving she had performed her job competently. See *Daigle v. Liberty Life Insurance Co.*, 70 F.3d 394, 396 (5th Cir. 1995); see also *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 677-78, 93 S. Ct. 1817, 1824 (1973). There is a genuine issue as to why plaintiff was terminated.

### C. Whether Defendant Failed to Provide Reasonable Accommodation for Plaintiff

■ The trial court found that defendant had made "an accommodation of sorts by providing a stool for the plaintiff." The Act requires that a reasonable accommodation be made. 42 U.S.C. § 12112(b) (1994). Although it is generally the responsibility of the employee to let his disability be known, the employer has a responsibility to engage in an "interactive process" to determine what accommodations are reasonable and will allow the plaintiff to function in her job. *Beck v. University of Wisconsin Board of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). Federal courts have ruled that "[a]n employee's request for reasonable accommodation requires a great deal of communication between the employee and employer." *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir.

1996). Both the employer and the employee must act in good faith in working towards the reasonable accommodation. *Feliberty v. Kemper Corp.*, 98 F.3d 274, 280 (7th Cir. 1996).

Plaintiff testified that she asked for a stool to be placed in the front part of the store so that she could sit on occasion. Plaintiff testified that she was not allowed to have a stool in the front of the store and was discouraged from using a stool at all. There was no evidence that this would place an undue hardship on defendant. See 42 U.S.C. § 12112(b)(5) (1994). If the "accommodation of sorts" provided by defendant did not help plaintiff or if plaintiff was discouraged from using the accommodation, then defendant acted in a manner that would deny the goal of meaningful access, which is at the core of the Act. Plaintiff has presented a genuine issue as to whether a reasonable accommodation was made.

Defendant's position, in essence, is that one may make accommodations that a trier of fact might reasonably find inadequate and then discharge an employee for the failure to perform with the inadequate accommodations. While only a trial on the merits could determine whether this is what occurred, plaintiff adequately raised this scenario to prevent an adverse summary judgment. The adoption of defendant's position would turn the Act on its head and provide a roadmap for the invasion of its legislative intent. Plaintiff presented evidence sufficient to create genuine issues regarding the key facts needed to support her claims under the Act. The ultimate determination of the merit of plaintiff's claims should be made only after the issues are fully developed and presented at the trial. The judgment entered by the circuit court of Jackson County is reversed, and this cause is remanded for further proceedings.

Reversed; cause remanded.

WELCH and HOPKINS, JJ., concur.