EDMUND G. BROWN JR.
Attorney General
TAYLOR S. CAREY
Deputy Attorney General
THE HONORABLE FIONA MA, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:
May an entity or individual not licensed to practice medicine perform professional radiology services as part of a Medical Provider Network?
 CONCLUSION
An entity or individual not licensed to practice medicine may not perform professional radiology services, either as part of a Medical Provider Network or otherwise. *Page 2 
 ANALYSIS
We are asked whether an entity or individual who is not licensed to practice medicine in California may perform professional radiology services for a Medical Provider Network.[1] We conclude that they may not.
As a result of a wide-ranging package of legislative reforms to California's workers' compensation laws passed in 2004, employers are permitted to require that their injured employees obtain medical services from a Medical Provider Network (MPN) that has been approved by the Division of Workers' Compensation.[2] The Legislature's purpose in authorizing the use of MPNs is to improve medical care for injured employees by providing the employees with a choice of physicians for their work-related medical conditions.[3]
An MPN is a network of physicians who are pre-designated to provide reasonable and necessary treatment to employees for work-related injuries. MPNs are made up of physicians, each acting within the scope of his or her licensure, who specialize in treating various conditions including both occupational and nonoccupational injuries or conditions, with the goal that at least 25 percent of the physicians in the network will be "primarily engaged in the treatment of nonoccupational injuries."[4] Each MPN must comprise enough physicians, in enough areas of medical specialty, to be able to provide treatment for injuries in a timely manner.[5] *Page 3 
The statute authorizing the establishment of MPNs calls for the administrative director of the Division of Workers' Compensation to adopt regulations implementing the new MPN law. Those regulations are found in Title 8 of the California Code of Regulations.[6] The MPN regulations are silent regarding whether ancillary medical services, such as radiology services, may be performed by unlicensed persons.
We believe that the regulations' silence on this issue is unsurprising; the scope of the regulations is limited to the scope of the enabling statute, which concerns itself solely with establishing a new type of administrative structure (the MPN) for providing medical care to injured workers' within the workers' compensation system. Questions regarding the legality of any given medical practice are beyond the scope of the workers' compensation reform legislation, and would therefore appear to us to be beyond the expected scope of the MPN regulations.
Nevertheless, we are informed that since 2005 there have been some complaints of non-professional corporations engaging in ancillary professional radiology services within the context of Medical Provider Networks, and we have been asked to address the question whether the activity remains illegal.[7]
To begin with, we reiterate our view that professional radiology services — specifically including the selection of a suitable radiologist, and the selection of a suitable radiology facility with appropriate equipment and personnel, as well as preparing and interpreting radiological images — involve the exercise of professional judgment as part of the practice of medicine.[8] Unless otherwise provided by law, it is unlawful to practice or attempt to practice medicine without a license.[9] *Page 4 
Furthermore, California law establishes a general rule that a license to practice medicine may be issued only to a properly qualified person, and not to a corporate entity.[10] The practice of medicine by a corporate entity, except a professional medical corporation, [11] is prohibited because "it is incongruous in the workings of a professional regulatory licensing scheme which is based on personal qualification, responsibility, and sanction . . . [and] the interposition of a lay commercial entity between the health professional and the patient would give rise to divided loyalties on the part of the professional and would destroy the professional relationship that is based on trust and confidence."[12] The ban applies to for-profit and not-for-profit corporations alike.[13]
Thus the issue presented to us narrows down to this question: Is there anything about the MPN structure that would permit an unlicensed person or entity to be excepted from the general prohibition on corporate practice of medicine? We think there is not. While the MPN arrangement is new to the workers' compensation system, we think it is unreasonable to suggest that merely by introducing this new administrative structure the Legislature intended to allow for professional medical services to be provided by an association comprising both licensed professionals and unlicensed persons. It has long been established that the law generally does not countenance attempts to divide the practice of a profession into a business side, to be conducted by an unlicensed person, and a professional side, which requires a license.[14] "In a professional corporation, it is *Page 5 
not always possible to divide the `business' side of the corporation from the part which renders professional services; the subject is treated as a whole."[15] "[T]he prospective purchase of a piece of radiological equipment could be impacted by business considerations (cost, gross billings to be generated, space and employee needs), medical considerations (type of equipment needed, scope of practice, skill levels required by operators of the equipment, medical ethics), or by an amalgam of factors emanating from both business and medical areas. The interfacing of these variables may also require medical training, experience, and judgment."[16] These are among the reasons why the corporate practice of medicine is generally prohibited in California.[17]
The MPN statute permits the linkage of individual providers into a network of providers meeting the aggregate medical service needs of the injured worker's employer, but it does not eliminate licensure requirements for participants.[18] Before the MPN law was enacted, we concluded that a non-professional corporation (known as a "management services organization") would be engaged in the unlawful practice of medicine if it entered into an agreement with a labor union to select, schedule, secure, and pay for radiology diagnostic services ordered by the union's physician for union members.[19] We find no material difference between the kinds of activities that we considered in our earlier opinion and the kinds of professional radiology services that are under consideration here. Nothing in the MPN law changes our opinion that these kinds of professional radiology services constitute the practice of medicine, nor does anything in the MPN law create a new exception.[20]
to the ban on the corporate practice of *Page 6 
medicine.
We have previously made clear our view that "any reevaluation of the long standing proscription against the unlicensed corporate practice of medicine in any form should and must fall within the exclusive province of the Legislature."[21] Since then, the Legislature has taken no action to alter or amend our interpretation of the laws governing the practice of medicine. Under these circumstances, we can assume that the Legislature is aware of and continues to endorse our view of the law on this issue.[22]
For all these reasons we conclude that an entity or individual not licensed to practice medicine may not perform professional radiology services, either as part of an MPN or otherwise.[23]
[1] For purposes of this opinion, we use the phrase "professional radiology services" to include not only creating, reading, and interpreting radiological images, but also related professional services such as the selection of a suitable radiologist, the selection of a radiology site with appropriate equipment and personnel, as well as charging and collecting fees for such services. See83 Ops.Cal.Atty.Gen. 170, 171 (2000).
[2] Lab. Code §§ 4616-4616.7 (added by 2004 Stat., ch. 34, § 27 (Sen. 899)).
[3] Sen. Rules Comm., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 899 (2003-2004 Reg. Sess.) as amended Apr. 14, 2004, p. 5.
[4] Lab. Code § 4616(a)(1).
[5] Pursuant to Labor Code section 4616.7, certain healthcare organizations, healthcare service plans, group disability insurance policies, and Taft-Hartley health and welfare funds are deemed approved MPNs.
[6] 8 Cal. Code Regs. §§ 9767.1-9767.16.
[7] In 83 Ops.Cal.Atty.Gen. 170 (2000), before the MPN law was enacted, we addressed a very similar question. There, we were asked whether a non-professional corporation, known as a management services organization, could enter into an agreement with a labor union to select, schedule, secure, and pay for radiology diagnostic services ordered by the union's physician for union members and charge the union a fee for its management services. We concluded that the management services organization would be engaged in the unlawful corporate practice of medicine under such an arrangement.
[8] See 83 Ops.Cal.Atty.Gen. at 171 ("[D]iagnosis by any method, device, or procedure is an integral aspect of the practice of medicine."]; see also Bus. Prof. Code §§ 2038, 2052, 2089.
[9] Bus. Prof. Code §§ 2052, 2053.
[10] With respect to corporations and other legal entities, Business and Professions Code section 2400 provides that, "Corporations and other artificial entities shall have no professional rights, privileges, or powers." See 57 Ops.Cal.Atty.Gen. 231, 232 (1974);55 Ops.Cal.Atty.Gen. 39, 40 (1972); 54 Ops.Cal.Atty.Gen. 126, 127
(1971).
[11] "Under Business and Professions Code sections 2406 and 2408, a medical corporation comprised of licensed professionals may render professional services as long as it is in compliance with the Moscone-Knox Professional Corporation Act (Corp. Code § 13400 et seq.), which requires that only licensed persons render professional services on behalf of the corporation. (Corp. Code §§ 13405, 13406(a))." Palmer v.Super. Ct., 103 Cal. App. 4th 953, 963 (2002).
[12] 83 Ops.Cal.Atty.Gen. at 172; see also 65 Ops.Cal.Atty.Gen. 223,225 (1982); 63 Ops.Cal.Atty.Gen. 723, 732-733 (1980);39 Ops.Cal.Atty.Gen. 155, 156-157 (1962).
[13] Cal. Phys. Serv. v. Aoki Diabetes Research Inst.,163 Cal. App. 4th 1506, 1515 (2008), rev. denied 2008 Cal. LEXIS 11250 (Sept. 17, 2008); see also 83 Ops.Cal.Atty.Gen. at 170 n. 2.
[14] Painless Parker v. Bd. of Dental Examrs., 216 Cal. 285, 296
(1932); see Garvai v. Bd. of Chiropractic Examrs., 216 Cal. App. 2d 374,378 (1963); 57 Ops.Cal.Atty.Gen. at 233; 55 Ops.Cal.Atty.Gen. 103, 107
(1972).
[15] Marik v. Super. Ct., 191 Cal. App. 3d 1136, 1140 (1987) (internal quotations and citations omitted).
[16] Id. at 1140 n. 4.
[17] Benjamin Franklin Life Assurance Co. v. Mitchell,14 Cal. App. 2d 654 (1936) (a corporation or unlicensed person may not practice, directly or indirectly, certain learned professions such as medicine, dentistry, and the like).
[18] See Lab. Code § 4616(a) (describing "physicians" and "medical treatment" to be made available by MPNs).
[19] 83 Ops.Cal.Atty.Gen. at 174.
[20] Business and Professions Code section 2400 itself permits limited exceptions to the ban, in that it permits physicians to be employed "on a salary basis by licensed charitable institutions, foundations, or clinics, if no charge for professional services rendered patients is made by any such institution, foundation or clinic." See,e.g., Co. of Los Angeles v. Ford, 121 Cal. App. 2d 407, 413-414
(1953) (§ 2400 was not violated when county hired medical schools and their students as independent contractors to provide patient services, where county was obligated to provide care for indigents; schools did not offer medical services to public generally; and school administrators played no part in doctor-patient relationships). Express statutory exceptions allow university medical schools to operate clinics primarily for the purpose of medical education (Bus. Prof. Code § 2401(a)); allow certain nonprofit corporations to operate clinics for the purpose of medical research (id. at 2401(b)); and allow certain narcotic treatment programs and public hospitals to employ medical professionals under specified conditions (id. at § 2401 (c), (d), 2401.1.) In addition, section 2400 does not apply to medical or podiatry corporations practicing pursuant to the Moscone-Knox Professional Corporation Act (see
Corp. Code § 13400, et seq.).
[21] 55 Ops.Cal.Atty.Gen. at 107.
[22] Ventura v. City of San Jose, 151 Cal. App. 3d 1076, 1080
(1984).
[23] It has been brought to our attention that the Department of Industrial Relations, Division of Workers' Compensation, has posted on its public website a segment entitled "Frequently Asked Questions" which addresses the issue of the unauthorized practice of medicine in a manner that may leave readers in doubt about whether the law has changed since we issued our 2000 opinion. We have been requested to direct the Department of Industrial Relations to revise its website comments to conform to our opinions. Although we invite the Department to review its published information in light of our opinions on this subject, we are without jurisdiction or authority to issue such a direction. *Page 1